LESTER R. HORTON v. HUMBLE OIL & REFINING COMPANY, JESSE A. KISER AND G. S. ATKINS.

(Filed 22 November, 1961.)

**1. Contracts § 1—**

In order to constitute a valid contract there must be an agreement of the parties upon the essential terms of the contract, definite within themselves or capable of being made definite.

**2. Same; Contracts § 27— Evidence held to establish negotiations for agreement but not execution of definite contract.**

Evidence to the effect that plaintiff terminated his employment and went to a training school in consideration of defendant's agreement to lease him a filling station, aid him in financing essential equipment, and that the station would be "fully equipped" by the time plaintiff returned from the training school, without any evidence as to what the parties meant by the term "fully equipped" and with further evidence tending to show uncertainty in regard to the agreement of financial assistance and credit, together with evidence that the parties contemplated signing a lease containing the specific terms of the agreement, and that the lease was delivered to plaintiff but never executed by him, is held insufficient to show a binding agreement between the parties but tends to establish only negotiations for a written agreement which was not executed.

**3. Same—**

Evidence that defendant represented that plaintiff could earn at least a specified sum in the operation of a filling station to be leased to him by defendant is insufficient to establish a binding contract in regard thereto, since such promissory representation amounts to nothing more than a statement of opinion upon which plaintiff had no right to rely.

DENNY and PARKER, JJ., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Mintz, J.,* at April 1961 Term, of LENOIR.

Civil action to recover damages alleged to have been sustained by plaintiff as a result of breach of contract with the defendant Humble Oil & Refining Company relative to the lease of a gasoline service station at the corner of Highland Avenue and N. C. Highway No. 11, near the city limits of Kinston, North Carolina.

Plaintiff alleged in the complaint, among other things, that defendant Oil Company agreed: (1) To lease to him the aforementioned service station, and to guarantee him an income of at least $100.00 per week for the first year of operation and at least $10,000.00 for the second year; (2) to fully equip and stock said station; (3) to arrange for plaintiff to attend a training school for service station operators in Charlotte, N. C.; (4) to finance plaintiff in equipping and stocking said station to the extent of $4,000.00, in addition to the $2,500.00 which plaintiff agreed to invest for said purposes; (5) to assist and supervise plaintiff in the operation of the station for two-weeks; and (6) to acquaint, aid, and assist plaintiff in the operation of the business.

Plaintiff further alleged that he agreed: (1) To terminate his employment with E. I. DuPont de Nemours & Company; (2) to invest his savings up to $2,500 in equipping and supplying the said station; (3) to borrow an additional $4,000 with the assistance of the corporate defendant for equipping and supplying the station; (4) to take the eight weeks training course for service station operators in Charlotte, North Carolina; (5) to lease the station; and (6) to operate the station.

Plaintiff further alleged that he complied with the terms of the contract to the extent he was permitted so to do by said defendants, but that defendants failed to comply with the terms of the contract. Thus, plaintiff alleged damage in specified amounts as a result of the alleged breach of contract.

Defendants in their answer denied the material allegations of the complaint. Defendants Kiser and Atkins demurred *ore tenus* to the complaint, and judgment sustaining the demurrer was entered dismissing the action as to them, to which plaintiff did not assign error.

At the trial, the sole testimony offered was that of plaintiff. He testified, relative to the creation of the alleged contract between himself and defendant Oil Company, that in July, 1957, he had been working for the DuPont Company at Kinston for six and one-half years, his salary at that time being $100.40 per week. Mr. Cooper of Harvey Oil Company contacted him at that time and asked him if he could come and meet a representative of defendant Oil Company. Plaintiff then went to the Harvey Oil Company offices, where

he was introduced to defendant Kiser who, as plaintiff was told, was a representative of Esso and had jurisdiction of the new station on Highland Avenue. Mr. Kiser told plaintiff that he "looked like a young, healthy man that they could place there and train, and that this would be a superior investment and would pay off materially."

Plaintiff further testified that defendant Kiser mentioned a number of factors that indicated that the station would be a success and would "pump" 20,000 gallons of gasoline per month. After plaintiff told defendant Kiser about his employment situation with DuPont, and the amount of money that he needed to meet his monthly obligations, defendant Kiser said: "The school we are sending you to in Charlotte would make a first-class operator out of you. I can guarantee you will make the payments you are making, and with the build-up of that station, you could make $10,000 a year, and that would certainly be bettering yourself."

As to the financial arrangements necessary to open the filling station, plaintiff testified that he informed Mr. Kiser that he could raise nearly $2,500. Mr. Kiser replied that plaintiff would need at least another $4,000. When plaintiff stated that he could not raise that amount, Mr. Kiser said: "I will take care of that. I will call Mr. Harvey; he owns his own bank and operates Harvey Oil Company; I will make arrangements for that."

Plaintiff further testified that Mr. Kiser informed him as to what he would have to do to enter the training school. He then took plaintiff to the Commercial Bank where plaintiff applied for credit, and later introduced plaintiff to Mr. Smith, the regional manager of defendant Oil Company. After a period of general discussion, Mr. Smith told plaintiff: "I assure you that you will not lose anything with Esso behind you, worth millions of dollars, and Harvey worth millions of dollars. You can't lose anything."

Mr. Kiser then told plaintiff that he would give plaintiff the necessary assistance for selection of proper equipment, and for setting up and opening the station. In plaintiff's words: "Mr. Kiser told me that all of that (equipment) would be selected by my assistants while I was in school, with everything complete when I got out of school, and when I came back from school, the station would be ready to open the doors and take in full service in business. With reference to assisting me after the station was opened, he said that I would get complete assistance from him; that he was (salesman of) * * * tires, batteries and accessories. That was why he was handling the territory in that capacity. He said if he was here when I got back from school * * * I was to get two weeks assistance in opening the station, getting everything set up, and taking in new business if I needed it."

As to the necessity of earning an amount sufficient to pay his living expenses and also to pay his monthly bills, plaintiff testified: "He (Mr. Kiser) said he could guarantee me the amount to meet them certainly; that I would be cheating myself, being a business man of my ability, not to take the proposition. He assured me of the one hundred dollars a week, and he assured me that at the end of the year, I would make ten thousand dollars the second year. I saw there was an opportunity to better myself, and I told him that I would take it."

Plaintiff further testified that he went to the training school as arranged, but that when he returned he found "that the arrangements for the equipment had not been exercised," and that "credit had not been set up for me at Esso Headquarters. * * * The station was not equipped when I returned from school, not a desk or anything."

Nevertheless, plaintiff opened the station and hired two men to assist him in operating it. After a short period, however, plaintiff "* * * saw that if something wasn't done to make the station a paying proposition that I had been promised, I would never be able to make it." At the suggestion of defendant Atkins, plaintiff reduced the price of gasoline and displayed signs to that effect, but the business failed to prosper. Thus, plaintiff testified, shortly thereafter he settled all accounts with the distributor, Harvey Oil Company, and closed the station.

On cross-examination, plaintiff testified that it was contemplated that a written lease for the filling station would be drawn and signed by him, and that such a lease was handed to him by defendant Atkins around the first of October. In plaintiff's words, "I kept it (the lease), read through part of it, and never did sign it. I kept it until I closed the station. In a week or two, or a month, Mr. Atkins called me and asked if I could bring it to Harvey Oil Company. He said he had another application. I took it to him. I tried to cooperate. I stayed there five weeks without paying any rent, without signing any lease, and operated the filling station. The lease was about 12 or 15 pages, and I read through most of it and saw what the contents of it were. Up until that time, Esso hadn't followed through on their obligations and I was afraid to bind myself by signing a lease then. I didn't know what would take place."

On both direct and cross-examination, plaintiff testified that at the time he was about to close the station, he was told by defendant Atkins that defendant Oil Company had stations which it operated as a "project" wherein the station operator was an employee on a salary-commission basis. Plaintiff testified that he asked defendant Atkins why this station was not operated that way, and defendant Atkins replied that the station in question was built by the Harvey firms and leased to Esso Standard, and that Esso Standard then gave Harvey

Oil Company the right to supply the station so that Esso couldn't supply it as they would supply their own station.

At the close of plaintiff's evidence, defendant Oil Company made motion for judgment as of nonsuit. The motion was allowed by the court below, to which plaintiff objects, excepts and appeals to Supreme Court, and assigns error.

*Jones, Reed & Griffin for plaintiff appellant.*

*Whitaker & Jeffress, Lassiter, Moore & Van Allen, John T. Allred for defendant appellee.*

WINBORNE, C.J.  The pivotal question presented on this appeal is this: Is there sufficient evidence, when viewed in the light most favorable to plaintiff, to establish the existence of a contract between plaintiff and the defendant Oil Company? The answer is No.

In *Williamson v. Miller*, 231 N.C. 722, 58 S.E. 2d 743, this Court said: " 'To be binding, the terms of a contract must be definite and certain or capable of being made so.' *Elks v. Ins. Co.*, 159 N.C. 619, 75 S.E. 808; *Sides v. Tidwell*, 216 N.C. 480, 5 S.E. 2d 316."

In *Elks v. Ins. Co., supra,* this Court said: "It is elementary that it is necessary that the minds of the parties meet upon a definite proposition. 'There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense. A contract requires the assent of the parties to an agreement, and this agreement must be obligatory, and, as we have seen, the obligation must, in general, be mutual.' 1 Par. Con., 475."

In the instant case, there is not sufficient evidence that the parties ever achieved a meeting of the minds upon the definite and certain terms of a contract. Plaintiff testified that the defendant Oil Company agreed to "fully equip" the filling station by the time that the plaintiff had returned from school, but there is neither sufficient evidence of what is generally meant by this term, nor evidence of what either party actually understood it to mean.

As to the financing of this equipment, plaintiff testified at one point that, "Payment for the small equipment was to be set up for 36 months, and heavy equipment could be set up on 48 months, and there would be a small down payment I would be billed for. That was the method of paying for the equipment to be furnished me by Standard Oil." At another point, however, plaintiff testified that an agent of defendant Oil Company took him to the Commercial Bank in Kinston to assist him in getting a loan which "was to be used to purchase additional equipment and stock, I reckon."

This and similar uncertainty revealed in the testimony relative to

HORTON v. REFINING COMPANY.

the other terms of the alleged contract indicate that the parties did not reach that meeting of the minds necessary to the formation of a binding contract.

However, there is evidence that the parties contemplated entering into a written contract. Plaintiff testified that a written lease for the filling station was given to him; that he kept it and read part of it; but that he did not sign it because "I was afraid to bind myself by signing a lease then."

In *Elks v. Ins. Co., supra,* it is said: "If the minds of the parties meet upon a proposition which is sufficiently definite to be enforced, the contract is complete, although it is in the contemplation of the parties that it shall be reduced to writing as a memorial or evidence of the contract; but if it appears that the parties are merely negotiating to see if they can agree upon terms, and that the writing is to be the contract, then there is no contract until the writing is executed. *Winn v. Bull,* 7 Ch. D., 31; *Pratt v. RR,* 21 N.Y. 308; *Steam Co. v. Swift,* 41 Am. St. 553 (86 Me. 248) ; *Rankin v. Mitchem,* 141 N.C. 277."

Plaintiff lays stress upon the fact that he relied on the statements made by agents of defendant Oil Company as to the income that he would receive from the business. However, it appears that, under these circumstances, such statements amount to no more than what this Court has referred to as "sales talk" or "huffing". As was said in *Pritchard v. Dailey,* 168 N.C. 330, 84 S.E. 392, "The representations of the defendant seem to be what are called 'promissory representations', looking to the future as to what can be done to the property, how profitable it was, and how much could be made by the investment. Representations which merely amount to a statement of opinion go for nothing. One who relies on such affirmations made by a person whose interest might prompt him to invest the property with exaggerated value does so at his peril and must take the consequences of his own imprudence. *Cash Register Co. v. Townsend,* 137 N.C. 652; Kerr on Fraud and Mistakes, p. 83."

Thus it appears that the court below was correct in allowing defendant's motion for judgment as of nonsuit. As this ruling is determinative of the case, it is unnecessary to discuss plaintiff's assignment of error relative to the measure of damage.

Hence, the judgment of the court below is

Affirmed.

DENNY, and PARKER, JJ., took no part in the consideration or decision of this case.