**Ronald C. WILSON, Plaintiff,**

v.

**POPP YARN CORPORATION, a corporation, and William A. Popp, an individual, Defendants.**

**No. C–C–87–82–P.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 12, 1988.

John O. Pollard, Blakeney, Alexander & Machen, Charlotte, N.C., for plaintiff.

J. Dickson Phillips, III, David C. Wright, III, Robinson, Bradshaw & Hinson, Charlotte, N.C., for defendants.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendant's Motion for partial summary judgment. This is a wrongful discharge case, in which Plaintiff asserts causes of action in age discrimination, breach of contract, fraud, and under state labor regulations. Defendants seek summary judgment in their favor on the age discrimination and fraud claims.

Fed.R.Civ.P. 56 provides for summary judgment in favor of a defendant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts and inferences to be taken therefrom must be viewed in the light most favorable to the moving party. *Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1001, 1004 (4th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). In cases such as the one at bar, where a major element of the age discrimination and the fraud claims has to do with Defendants' state of mind, summary judgment is difficult to justify; nonetheless, if the Rule's requirements are met, the Court must grant judgment for the movant. *Id.* at 1005.

■ The question on a motion for summary judgment is similar to that on a motion for directed verdict or for verdict notwithstanding judgment: whether a reasonable factfinder could return a verdict for the party opposing the motion on the basis of the evidence presented. *Anderson v.*

*Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The inquiry on summary judgment includes assessment of the evidence in light of the evidentiary burden each party will bear at trial. *Id.* Where Plaintiff must prove his case by a preponderance of the evidence, it must be apparent on summary judgment that Plaintiff will be able to present evidence at trial sufficient to allow a reasonable jury to find that Plaintiff has proved his case by a preponderance.

■ Concerning Plaintiff's ADEA claim, it is insufficient here for Plaintiff to establish the mere possibility that age played a role in Defendant's decision. Plaintiff's evidence must allow a factfinder to draw a reasonable inference that, more probably than not, age was a determining factor: if not for Defendant's bias against Plaintiff because of his age, he would not have been discharged. *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 238, 242–43 (4th Cir.1982);[1] *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1051 (4th Cir.1987).

As to the fraud claim, Plaintiff's burden is to prove fraud by clear and convincing evidence. *Huntley v. North Carolina State Bd. of Educ.*, 493 F.2d 1016, 1019 (4th Cir.1974).

## I. FACTS

Much of the factual background of this case is undisputed. The parties agree that Plaintiff was hired in January, 1986, at age 41, to the position of Southern Sales Manager of Defendant Popp Yarn Corporation ("Popp Yarn"). Plaintiff had been employed by Dixie Yarn Corporation, but had become dissatisfied with his employment there. He negotiated for a salary of $70,000 per year from Popp Yarn, and received guaranteed straight salary of $70,000 per year for two years, plus commissions. After the first two years, Plaintiff's pay would be based entirely on sales. Plaintiff

---

1. While the *Lovelace* case addressed a motion for judgment notwithstanding the verdict, the Supreme Court recently has expressed the view that "the inquiry involved in ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive standard of proof that would apply at the trial on the

merits." *Anderson*, 106 S.Ct. at 2512. If it is clear on a motion for summary judgment that plaintiff will be unable to prove an essential element of his case, summary judgment for defendants is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

and Defendants executed a written employment contract setting forth the terms and conditions of his employment.

One of the conditions was that Plaintiff devote all of his time, attention, and energy to the performance of his duties as Southern Sales Manager, subject to the direction and control of [Defendant] Popp Yarn, and ... serve Popp Yarn diligently and to the best of his ability, and in all respects ... make every effort to promote the business of the said Popp Yarn.

Contending that Plaintiff had failed to fulfill this condition, Defendants terminated Plaintiff's employment in July, 1986, approximately six months after he was hired. Plaintiff claims that he was fired because of his age; Defendants assert that he simply was not doing a job worthy of his pay.

Plaintiff's direct evidence of Defendants' motive consists of a conversation between Plaintiff and Defendant William A. Popp ("Popp"), to which Plaintiff testified at his deposition and again by affidavit:

Q. Has it been your practice to make known to prospective or potential employers that you were fired, or dismissed, from Popp Yarn?

A. It's unavoidable.

Q. Meaning that they would ask you, and you would—

A. They would ask me why I was no longer employed by Popp Yarn, yes.

Q. Well, has anyone ever asked you why you were dismissed from Popp Yarn?

A. Yes.

Q. And what have you customarily responded?

A. The only thing I could tell them is that Bill Popp told me as the reason he was firing me.

Q. Have you told others something that Mr. Popp said to you?

A. Yes.

Q. And what was that?

A. He said he was losing entirely too much money, he could no longer afford to pay me what he was paying me.

Q. And who have you told that to?

A. Whoever asked me. I can't tell you specifically, right off the top of my head.

Q. Is that what you told to the man at Comtext?

A. Probably, but I don't remember the specific statement, no.

Q. Is that what you would have told the man at Louis Batson?

A. I don't recall that specifically either, but if they asked me specifically why, I would have said that, yes.

Q. That was your customary response?

A. That was the only true response that I knew of.

Q. Did you give any other reasons for why you thought you had been fired?

A. I don't recall anything right offhand, no.

Q. You didn't mention any other reason?

A. Not that I recall.

Q. And is that what you believe to be the reason why you were fired?

A. Yes, I do. I have no reason to believe otherwise.

Q. On what basis, then, do you claim in your Complaint that you were fired on the basis of your age?

A. Because he said he was paying me too much, and during the ensuing conversation, I asked him, well, what do you expect to get someone with the qualifications you wanted for this job for, and he said, maybe we don't need someone with your qualifications, insinuating he would have to hire someone with less experience, implicating a younger age.

Q. But he never said anything about your being too old, is that right?

A. Not specifically.

Q. Did he ever say anything to you specifically that it was your level of qualifications that he couldn't afford?

A. He didn't clarify it that well, no.

Q. He just simply said he was losing too much money?

A. That's correct.

Q. Was there any other comment or statement that led you to conclude that age played any part in your dismissal?

A. Not that I can think of right off-hand, no.

Plaintiff's Deposition, pp. 58–61.

Q. And I think as we've already covered, your understanding is that you were terminated, not for any failure to perform your duties, but because you were being paid too much, is that right?

A. That's the only answer I was ever given.

Plaintiff's Deposition, pp. 150–51.

When I picked Popp and Wood up at the airport, Popp said we had some serious talking to do about my lack of sales (primarily sales from Clemson Yarns). When I asked if they had come to fire me, Popp said "we don't know yet, but maybe." Popp said he was losing too much money and could not continue to pay me as much as was agreed. I reminded Popp of his stated desire to hire a very seasoned man with vast experience in the apparel yarn market and asked him how he could expect to hire anyone with this experience for very much less money. Popp then replied that he had decided they would hire someone with less experience and not have to pay as much.

Plaintiff's Affidavit, pp. 7–8, ¶ 45.

After several hours of this kind of discussion, I asked Popp to tell me the real reason for his anger with me. Popp responded: "Ron, I'm just losing too much money, and something has to be done."

I specifically asked Popp about his promise to give me the time needed to lay groundwork and reestablish business, and he replied: "I can't afford to wait any longer. I'm just losing too much money."

On the next day, Popp fired me, ...
Plaintiff's Affidavit, p. 8, ¶ s 47–49.

Defendants replaced Plaintiff in October, 1986 with a 46–year-old man.

## II. DISCUSSION—AGE DISCRIMINATION

■ There are two ways Plaintiff may prove his case, as the Fourth Circuit noted in *Lovelace*, 681 F.2d at 239. Plaintiff may show that he was treated unfairly because of his age (1) "by any direct or indirect evidence relevant to and sufficiently probative of the issue," *id.*, or (2) by satisfying the "proof scheme for Title VII cases featuring a rebuttable factual presumption favoring claimants in the initial stages of proof ... properly adapted ... for application in ADEA litigation." *Id.*

### A. ORDINARY PROOF

■ Plaintiff's only direct evidence consists of Defendant Popp's statements, set out above, to the effect that Plaintiff was too expensive and Defendants might hire a less experienced employee to save costs. Plaintiff contends that this constitutes evidence supporting an inference of age discrimination because, in essence, a "less experienced" salesman necessarily implies a *younger* salesman.

The Court finds these statements, particularly in the light of all of the evidence, insufficient to raise a genuine issue of fact on the question of discrimination. Defendant Popp's statements show only that Defendants were concerned about costs. To the extent that Defendant Popp's statement can be read as an assertion that "older employees cost more," it is merely a truism, *Latimore v. University of North Carolina at Charlotte*, 669 F.Supp. 1345, 1351 (W.D.N.C.1987), and there is no indication whatsoever that Plaintiff's *age*, rather than the fact that Plaintiff was earning the highest salary of anyone in the company, older or younger, was the reason he was fired. Additionally, Defendants actually hired a man 5 years older than Plaintiff to

replace him.[2] Plaintiff has not brought forth any evidence to show that Defendants were engaged in a "youth movement" or an attempt to infuse their organization with "new blood," 681 F.2d at 243, n. 15, or that Defendants refused to consider *any* employees over a certain age because they believed *all* older employees were too expensive. In fact, Defendants presented uncontroverted evidence that four of the five sales persons in Popp Yarn were over 40; excluding Plaintiff (who was 41), three of those four were over 55. Affidavit of Defendant Popp, p. 1, ¶ 5.[3] Without the aid of the presumptions derived from *McDonnell Douglas*, Plaintiff's case cannot withstand Defendants' Motion.

## B. PROOF THROUGH MCDONNELL DOUGLAS SCHEME

▇ In an age discrimination case, the *McDonnell Douglas* scheme for invoking a presumption of discrimination requiring rebuttal by the defendant consists of two elements: Plaintiff must show that (1) he was demoted, discharged, or otherwise treated unfavorably, and (2) either (a) he was replaced by someone outside the protected age group or (b) there is "some other evidence that ... [Defendants] did not treat age neutrally" in the decision. *E.E.O.C. v. Western Electric Co.*, 713 F.2d 1011, 1014–15 (4th Cir.1983).[4] Plaintiff obviously was treated unfavorably when he was fired. Just as obviously, his replacement was *within* the protected age group. To invoke the presumption of discrimination, then, Plaintiff must present "some other evidence" that his age played a role in his discharge.

As noted above, and as Plaintiff appears to recognize, Defendant Popp's statements are the only evidence Plaintiff has put forth on this issue. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 9–10.

While it may be true in some cases that evidence insufficient to carry Plaintiff past a motion for summary judgment *outside* of the *McDonnell Douglas* presumption may be sufficient "other evidence" to establish

---

2. Plaintiff notes that his replacement was not hired until after Defendants had notice of Plaintiff's age discrimination claim, implying that Defendants hired Plaintiff's replacement with an eye toward defeating Plaintiff's discrimination claim. Indeed, the Fourth Circuit has stated that replacement by an individual outside the protected group "is not an essential element of the ADEA claim." *Lovelace*, 681 F.2d at 238 n. 5. "But absolute and relative ages of the claimant and his replacement have obvious relevance in assessing whether a factual inference of age discrimination is permissible. We agree with the First Circuit that

> Replacement of a 60 year old by a 35 year old or even a 45 year old within the protected class would be more suggestive of discrimination than replacement of a 45 year old by a 42 year old within the protected class or a 39 year old outside it."

*Lovelace*, 681 F.2d at 242–43 n. 13, quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n. 9 (1st Cir.1979).

3. Popp's affidavit reveals an age-breakdown among salespeople as follows:

| | |
|---|---|
| William Popp | 71 years |
| R. David Wood | 59 years |
| Gene Matthews | 63 years |
| Plaintiff Ronald Wilson | 41 years |
| Richard Popp | 36 years |

4. There is no question here that Plaintiff was within the protected age group. Because a factual issue exists concerning whether Plaintiff was performing up to legitimate expectations, the Court will assume that he was.

In *Lovelace*, the court indicated that, to invoke the presumption, a plaintiff need show only that he was meeting his employer's legitimate expectations when he was demoted (or discharged), and that after the demotion his employer sought someone else to perform what had been the plaintiff's job. 681 F.2d at 239 and n. 8. In *Western Electric Co.*, however, the court held that it was an error of law to find the presumption established where the plaintiff had shown only that (1) he was a member of the protected age group; (2) he was performing his job as expected; and (3) he was treated unfavorably. 713 F.2d at 1015. The court then cited the requirement that a plaintiff either show replacement by a person *outside the protected age group*, or present some other evidence of a discriminatory motive. *Id.*

It is possible that *Western Electric*'s "some other evidence" requirement does not apply in a case where the plaintiff was fired and, in fact, was replaced (as opposed to a situation where the plaintiff's job was eliminated entirely). In the interest of allowing Plaintiff as much opportunity to establish his case as possible, the Court will not hold that Plaintiff's failure to show replacement by a person outside the protected class is, alone, fatal to his case.

a prima facie case, the particular case at bar is not of such type. Popp's statements are not sufficient evidence that age was involved in the decision to fire Plaintiff to invoke the presumption. Nor has Plaintiff presented any other evidence of age discrimination. Although Plaintiff may sincerely believe that he was fired because of his age, his belief does not constitute evidence.

It may indeed be true that Plaintiff's discharge was wrongful—that it was done for the wrong reason. To present an age discrimination claim, however, Plaintiff must show that the "wrong reason" was Plaintiff's *age*. Absent such showing, this case reverts to what it properly should be: a breach of contract case.[5]

### III. DISCUSSION—FRAUD CLAIM

■ Plaintiff's fraud claim originally consisted of an allegation that Defendant Popp falsely "represented to the plaintiff that if he accepted the offer he would have an employment contract for a fixed term of at least two years and could expect to earn $150,000 per year." Complaint, ¶ 32. As that allegation now stands, it is insufficient to support a fraud claim, for Plaintiff, in fact, did have an employment contract for a fixed term of two years, and Plaintiff admits that he understood that the $150,000 figure was based on his sales and was not an absolute guarantee. See Agreement, Exhibit C to Defendants' Reply Brief in Support of Motion for Partial Summary Judgment; Plaintiff's deposition at p. 99.

In his response to Defendants' Motion, Plaintiff enlarges the fraud claim to include Defendants' intentional misrepresentations about:

Popp Yarn's general business; the potential for sales from Popp's Charlotte office; the nature, extent, and current status of existing Popp accounts; the amount of money I would earn at Popp Yarn; the production capabilities and targets of Clemson Yarn Corp.; the quality of yarn produced by Clemson; the availability of customers for Clemson Yarn; the reasons for the decline in sales from the Charlotte office during Waterman's tenure, and the reason for Waterman's resignation; their understanding that it would take a long time to rebuild sales from the Charlotte office, including new sales of Clemson yarn, and; [sic] their willingness to allow me sufficient time to lay groundwork and make sales needed to revive the Charlotte office.

It is axiomatic that, unlike other claims, a cause of action grounded in fraud must be pleaded with specificity and proved with clear and convincing evidence. Fed.R.Civ. P. 9(b); *Huntley v. North Carolina St. Bd. of Educ.*, 493 F.2d 1016, 1019 (4th Cir.1974). Although Plaintiff's only pleaded claim of fraud has been shown by the evidence to be illusory, the Court nonetheless will consider the list of alleged misrepresentations contained in Plaintiff's Affidavit. Despite the length of this litany of allegedly fraudulent statements on Defendant Popp's part, on closer reading, combined with an examination of Plaintiff's deposition, only two charges of fraud are sufficiently well-stated to withstand Defendants' Motion.

### A. ALLEGATIONS TOO VAGUE

■ It is clear at the outset that many of these allegations are far too vague to support a claim of fraud. Specifically, Defendants' alleged false statements of "Popp Yarn's general business," and "the reasons for the decline in sales ... and ... for Waterman's resignation" are not set out with any specificity at all. Even with close scrutiny of Plaintiff's deposition, the Court is unable to glean what Defendant Popp said about these areas, and how such statements were false. Any claim of fraud based on these alleged misstatements cannot withstand scrutiny.

### B. ALLEGATIONS REGARDING STATEMENTS OF OPINION

■ Plaintiff complains that Defendant Popp falsely represented "the potential for

---

**5.** Because of the Court's resolution of Defendants' Motion on substantive grounds, the Court will not address the alternative jurisdictional ground: that Defendants have too few employees to be subject to the ADEA.

sales from Popp's Charlotte office," "the quality of yarn produced by Clemson," and "the availability of customers for Clemson Yarn." Each of these categories, however, necessarily implies a statement of opinion, including, no doubt, a certain amount of puffery. Statements of opinion, in large part because they can be neither true nor false, are not actionable as fraudulent. *Myrtle Apartments, Inc. v. Lumbermen's Mutual Casualty Co.*, 258 N.C. 49, 52, 127 S.E.2d 759 (1962). *See also Horton v. Humble Oil & Refining Co.*, 255 N.C. 675, 122 S.E.2d 716 (1961).

### C. PROMISES EMBODIED IN CONTRACT

█ Plaintiff's claim that Defendant Popp misrepresented "their understanding that it would take a long time to rebuild sales from the Charlotte office and including new sales of Clemson Yarn, and; [sic] their willingness to allow me sufficient time to lay groundwork and make sales needed to revive the Charlotte office" is an attempt to transform a breach of contract claim into one for fraud. The two-year term of employment and guaranteed salary were included in a written contract specifically because Plaintiff was concerned about initial sales. Plaintiff's Affidavit at ¶'s 26–28, 30, 32, 34. The "breathing room" was embodied in Plaintiff's contract; the allegedly fraudulent statements speak to the question whether Defendant was justified in terminating Plaintiff's employment after 6 months.

"[G]enerally, fraud cannot be predicated upon the mere nonperformance of a promise or contractual obligation." *Forstmann v. Culp*, 648 F.Supp. 1379, 1386 (M.D.N.C. 1986). If Defendant was not justified in terminating Plaintiff's employment, Plaintiff's remedy lies in a suit for breach of contract, not fraud.

### D. ALLEGED MISREPRESENTATIONS ABOUT ACCOUNTS

█ Defendant Popp's alleged misrepresentations concerning "the nature, extent, and ... status of ... accounts" are somewhat more clearly set out in Plaintiff's deposition. Essentially, it appears that Plaintiff is claiming that Defendant fraudulently misrepresented that Plaintiff would be free to sell Defendants' yarn products to virtually any customer in the southeast, when, in reality, Defendant Popp knew that many of those claimed potential customers were foreclosed to Plaintiff through exclusive representation agreements or other means. *See* Plaintiff's deposition at 99–133. Though arguably still rather undefined (especially since Plaintiff himself seems unable to specify his true complaint), nonetheless these allegations are sufficient to overcome Defendants' Rule 9(b) argument. And since, if Plaintiff is able to prove his case here, he will have shown that Defendant Popp made a representation to Plaintiff which at the time Popp knew to be false, Defendants' "future events" argument does not apply.

During his lengthy testimony on this issue, Plaintiff also appeared to raise a complaint concerning Defendant Popp's statement that, because Defendants represented so many manufacturers, Plaintiff would have at least one product that would fit the needs of every customer he visited. To the extent that this complaint was intended to be included in the category of "nature, extent, and ... status of ... accounts," it is mere puffery, and is not actionable. *See supra* III–B.

### E. CLEMSON YARN PRODUCTION

Regarding Plaintiff's claim that Defendant Popp misrepresented "the production capabilities and targets of Clemson Yarn Corp.," the analysis is much the same as with the alleged misrepresentations concerning accounts. Plaintiff clarified this allegation somewhat during his deposition, at least sufficiently so to withstand a Rule 9(b) motion. *See* Plaintiff's deposition at 134–137. Again, if Plaintiff proves his case, he will show that Defendant Popp told him certain things about the Clemson plant's capabilities, and about Defendants' plans for the Clemson plant, which things Popp knew at the time were untrue.

Though admittedly sketchy, Plaintiff's allegations of fraud in the last two areas

discussed are sufficient to stand. Nothing stated herein, however, is intended to intimate any opinion concerning Plaintiff's ultimate ability to prove his case on these points.

## F. PROCEEDING ON BOTH FRAUD AND CONTRACT THEORIES

█ Defendants have requested that the Court require Plaintiff to choose between his fraud and contract theories before trial, arguing that one cannot simultaneously assert a contract as ground for recovery and attempt to void the same contract for fraud. Alternative pleading is recognized in the federal courts. *See* Fed. R.Civ.P. 8(a). Any concerns which Defendants may have concerning Plaintiff's allegedly inconsistent positions may be taken care of at trial, by appropriate limiting instructions or otherwise.

Judgment will be entered in accordance herewith.

## JUDGMENT

THIS MATTER is before the Court on Defendant's Motion for partial summary judgment. In accordance with the Memorandum of Decision filed contemporaneously herewith,

NOW, THEREFORE, IT IS ORDERED that Defendants' Motion for partial summary judgment is GRANTED IN PART and DENIED IN PART, and so much of Plaintiff's complaint as seeks to recover for alleged age discrimination is DISMISSED WITH PREJUDICE.

---

* All defendants except Seafarers Pension Plan were dismissed from case on November 25, 1987.