**Ann Maria BALDINE d/b/a The Design Studio of Georgetown, Plaintiff,**

v.

**FURNITURE COMFORT CORPORATION, a Delaware Corporation, Defendant.**

**No. 2:95CV00517.**

United States District Court,
M.D. North Carolina,
Greensboro Division.

Nov. 15, 1996.

Jack W. Floyd, Louis C. Allen, III, Robert V. Shaver, Jr., Greensboro, NC, Steve A. Mandell, Vienna, VA, for Plaintiff.

Mack Sperling, Jennifer Van Zant, Greensboro, NC, Valerie A. Fant, Washington, DC, Michael J. Klisch, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

TILLEY, District Judge

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. # 49] filed on June 28, 1996. After viewing the materials submitted, it is determined that there are material factual issues in each of the claims and that the motion with regard to those claims should be DENIED.

### I.

This case arises out of a dispute between the Plaintiff, Ms. Baldine, and The Stratford Company (Stratford), an unincorporated division of the Defendant, over a design for a "Comfort Center." Comfort Center is the name for Stratford's method of displaying its furniture in retail showrooms, a method which has been utilized since at least 1988. Stratford determined that the 1 988 Comfort Center design had become outdated by 1994 and solicited proposals for development of a new design. Four designers, including Plaintiff, submitted proposals. The parties disagree about whether Ms. Baldine's proposal was selected and whether an agreement embodying the essential elements of a contract was reached between Stratford and Ms. Baldine. In addressing Stratford's summary judgment motion, the parties have submitted conflicting material regarding what did or did not take place. However, in determining a motion for summary judgment, the non-moving party—here, Ms. Baldine—is entitled to have all reasonable inferences considered in the light most beneficial to her and to have all evidentiary conflicts resolved in her favor. Stated in the light most favorable to Ms. Baldine, the facts are as follows: Bill Sturman, Director of the Comfort Centers, reviewed the proposals submitted by the four designers and selected Ms. Baldine to do the design. Mr. Sturman and Ms. Baldine then had several discussions. According to Ms. Baldine's recollection, she and Mr. Sturman met on June 2, 1994 and orally reached an agreement upon the essential terms of a contract—that Ms. Baldine would create a design for the comfort center, be paid a retainer of $25 000 and a monthly fee of $10,000 for development of the concept and, then be paid $3300 for each of sixteen comfort centers to be created as well as an amount for support services. At the conclusion of the meeting, Mr. Sturman instructed Ms. Baldine to start work immediately, saying that he would take care of the required paperwork and issuance of checks.

Ms. Baldine did begin work immediately and, thereafter, created the basic design eventually adopted by Stratford. When, in early July, she had received no retainer check, she called Mr. Sturman to inquire about the money. He told her that payment was forthcoming so she continued to work on the concept until informed at a later date that the company had reworked the agreement to include terms she was never able to accept.

It is Ms. Baldine's claim that she and Stratford reached agreement upon the essential terms of a contract and that Stratford breached that agreement. She claims that Mr. Sturman's representations about forthcoming payment were false and made with the intent to induce her to work on the comfort center design. In addition, Plaintiff claims that the comfort center design eventually implemented by Defendant infringes upon the copyright she holds on the model and drawings for her "New Comfort Center" design. She further claims that Defendant violated the North Carolina Unfair and Deceptive Trade Practices Act by obtaining her design model under false pretenses and using it to create derivative works.

### II.

Summary judgment is proper only if there is no genuine issue as to any material fact. The moving party on a motion for summary judgment will have the burden of pointing to deficiencies in the record as to matters upon which the opposing party has the burden of

proof such that the opposing party cannot prove its claim or defense or showing otherwise why, upon the undisputed facts in the record, the moving party is entitled to judgment as a matter of law. The party opposing the motion for summary judgment may not merely rest on its pleadings, but must provide evidence or point to evidence already in the record, properly authenticated pursuant to Rule 56(e), that would be sufficient to support a jury verdict in its favor. *See* Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202, (1986); *Orsi v. Kirkwood,* 999 F.2d 86 (4th Cir.1993); *Herold v. Hajoca Corp.,* 864 F.2d 317 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989).

## A. Breach of Contract

■ Stratford contends that Ms. Baldine's proffered evidence is insufficient to show that the parties agreed to essential terms of a contact because there was no agreement regarding who would own the design, once completed, and the agreement was never put in writing as contemplated. Stratford also claims that Mr. Sturman did not have the authority to bind it on contractual matters.

■ As to the first contention, Ms. Baldine's testimony allows the reasonable inference that all essential terms of a contract were agreed upon on July 2, 1 994: there was agreement on exactly what Ms. Baldine was to do and what she was to be paid for performing that service. It was not essential to that agreement that the parties reached agreement on ownership once the design had been completed. *See Industrial and Textile Piping, Inc. v. Industrial Rigging Services, Inc.* 69 N.C.App. 511, 317 S.E.2d 47, 49 *rev. denied,* 312 N.C. 83, 321 S.E.2d 895 (1984).

As to the contention that no agreement existed because it had not been put in written form, the case law of North Carolina provides: manifestations of assent which are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiations. *See Horton v. Humble Oil & Refining Company,* 255 N.C. 675, 122 S.E.2d 716, 719 (1961). It would be Defendant's burden, not Plaintiff's, to prove by the greater weight of the evidence that one of the essential terms agreed to by the parties was that the agreement would not become enforceable until placed in writing and signed by the parties.

With regard to Sturman's authority, Jim Huene, Defendant's Vice President of Merchandising and Marketing and Sturman's immediate supervisor testified that Mr. Sturman as Director of Comfort Centers did have actual authority to bind the company. Further, sufficient facts have been proffered from which a jury could find that the Defendant knowingly clothed Sturman with apparent authority to execute a contract on its behalf. *See Hayman v. Ramada Inn, Inc.* 86 N.C.App. 274, 357 S.E.2d 394, 397, *rev. denied,* 320 N.C. 631, 360 S.E.2d 87 (1987).

## B. Fraud

■ Stratford contends that there has been no forecast of evidence that an existing fact was misrepresented and, therefore, there can be no claim for misrepresentation or fraud under North Carolina law. Without further elaboration, it is sufficient to observe that a reasonable fact finder could infer from Ms. Baldine's deposition testimony that Mr. Sturman told her in June that they had an agreement, to get to work on the design, that he would see to the details including preparation of the retainer check and that, in July, he told her payment was forthcoming yet no retainer or monthly payment was ever made. Mr. Sturman has denied by affidavit that any such agreement was ever reached. A jury crediting Ms. Baldine's testimony about Mr. Sturman's June and July statements could reasonably conclude that Sturman and, vicariously, his company knowingly made false statements about having reached an agreement and about making payments with the intent to induce Ms. Baldine to work on the comfort center design. A statement to the effect that an agreement had been reached and that the person making the statement would tender some specific performance when that party knew at the time it was not

going to tender that performance is a misrepresentation of a presently existing fact.

### C. Copyright Infringement

In order to prevail on a claim of copyright infringement, "a plaintiff must show first that she owned the copyright to the work that was allegedly copied, and second, that the defendant copied protected elements of that work." *Towler v. Sayles,* 76 F.3d 579, 581 (4th Cir.1996) (citations omitted). Stratford claims that Ms. Baldine can not claim copyright infringement because her ideas, incorporated into her comfort center design, can not be copyrighted. Stratford further claims that Ms. Baldine fails to meet one of the requirements for obtaining a copyright in that her work was not original because certain elements were contained in Stratford's previous comfort center design.

Ms. Baldine has registered her copyright with the copyright office and received a certificate of registration. (Exhibit E to Pl.'s Second Am. Compl.) Registration of a claim of copyright is a prerequisite to asserting a claim of infringement. 17 U.S.C.A. § 411(a) (1996.)[1] "The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights ... to be acceptable for registration, have all been received in the Copyright Office." 17 U.S.C.A. § 410(d). In this case, the effective date of the registration is April 1 0, 1 995, which was the date Ms. Baldine filed the application and paid the appropriate fee. Ms. Baldine has satisfied the applicable prerequisite by obtaining a copyright, effective April 10, 1995, before filing her claim for copyright infringement on April 17, 1995.

■ The issuance of a certificate of copyright by the Copyright Office creates a rebuttable presumption that the copyright is valid.[2] *Superior Form Builders v. Dan*

*Chase Taxidermy Supply Co., Inc.,* 851 F.Supp. 222, 223 (E.D.Va.1995), *aff'd,* 74 F.3d 488 (4th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 53, 136 L.Ed.2d 16 (1996). Stratford may overcome this presumption by offering evidence which attacks the validity of the copyright. *See, Service & Training, Inc. v. Data General Corp.,* 963 F.2d 680, 688 (4th Cir.1992). Because the burden of overcoming the presumption of validity created by the issuance of a certificate of registration is on the Defendant, only those objections to copyright validity which were raised by Stratford will be addressed.

#### 1. Validity of Plaintiff's Copyright.

■ Stratford attacks the validity of Ms. Baldine's copyright by claiming that her design is a derivative work and, as such, does not have the originality element required for copyright protection. Defendant contends that the majority of the individual elements were encompassed in an earlier version of the comfort center and that Ms. Baldine's "New Comfort Center" design is a derivative design. Stratford also claims that the individual elements of the design are not original and therefore not subject to copyright.

As an initial matter, a review of the facts, taken in the light most favorable to Plaintiff, reveals that Ms. Baldine does not claim a copyright to the individual elements of the design (tile, a fabric display, banners, etc.) but instead has copyrighted her particular arrangement of those elements as reflected by the models and drawings prepared by her. Because Ms. Baldine is not claiming a copyright on the individual elements of her design, Stratford's claim that the individual elements of her design are not copyrightable need not be addressed further.

Stratford's remaining attack on the validity of Ms. Baldine's copyright addresses the issue of derivative work and originality. The

---

**1.** Note that an action may also be brought under this section if the complainant has filed and been refused registration, in which case the district court may review the denial of registration along with the infringement claim.

**2.** Section 410(c) of the Copyright Act states:
   In any judicial proceedings the certificate of a registration made before or within five years

after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.
   17  U.S.C.A. § 410(c).

Copyright Act defines "derivative work" as "a work based upon one or more preexisting works." 17 U.S.C.A. § 101 (1996). The Copyright Act further provides that

> [t]he copyright in a ... derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

17 U.S.C.A. § 103 (1996). Just because a work is a derivative work does not mean that it can be afforded no copyright protection. Instead, the copyright protection for a derivative work extends, as the statute says, to the new, original works contributed by the subsequent "author." The Fourth Circuit has stated that

> the validity of a copyright of a compilation or derivative work depends on the originality of the compiler's individual contribution to the work or material .... the validity of plaintiff's copyright does not depend on the copyrightability of the components represented by the underlying work but by the originality of its own contribution to the copyrighted work.

*M. Kramer Mfg. Co., Inc. v. Andrews,* 783 F.2d 421, 440 (4th Cir.1986). According to the Fourth Circuit, "[i]t is also important that, in reviewing a derivative work for originality, it is not sufficient to consider the matter by looking at the component parts: the work must be reviewed as a whole, not just reviewed or analyzed part by part." *Id.* at 439 (citations omitted). The Baldine design will therefore be examined to determine whether there is any evidence of originality and differentiation between that design and the previous version of the comfort center designed by Connie Post.

The Fourth Circuit has noted that "[o]riginality requires 'independent creation plus a modicum of creativity'.... Copyright protection is available even if the quantum of originality is minimal." *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.,* 74 F.3d 488, 492 (4th Cir.) (citations omitted), *cert. denied,* — U.S. ——, 117 S.Ct. 53, 136 L.Ed.2d 16 (1996). The Plaintiff created her comfort center design in an effort to provide an updated version of the prior comfort center, designed by Connie Post. It is clear from the exhibits in the record that Ms. Baldine's design did differ significantly from the Connie Post design. (*Compare,* Exhibit A (Connie Post design) to Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. *with* Exhibit C (Baldine model) to Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J.) The Fourth Circuit has stated that the originality "requirement is satisfied if the new material or expression has ... 'a faint trace of' originality" and if it provides a 'distinguishable variation.' " *M. Kramer Mfg. Co., Inc. v. Andrews,* 783 F.2d 421, 438 (4th Cir.1986) (citations omitted). The Plaintiff has at least met this threshold of creativity. Stratford has not carried its burden of showing the invalidity of Ms. Baldine's copyright on the basis of lack of originality.

### 2. Defendant's Use of Plaintiff's Design

As noted above, to prevail on a copyright infringement claim, "a plaintiff must show first that she owned the copyright to the work that was allegedly copied, and second, that the defendant copied protected elements of that work." *Towler v. Sayles,* 76 F.3d 579, 581 (4th Cir.1996) (citations omitted). Stratford has failed to adequately attack the validity of Ms. Baldine's copyright and, for purposes of this motion, Ms. Baldine is deemed to own the copyright in her "New Comfort Center" model and drawings. Therefore, the Court will proceed to consideration of the second element of an infringement claim, that Stratford copied protected elements of her work. An attempt to show copying by the Defendant involves two elements: (1) Defendant has access to Plaintiff's work; and (2) the two works are "substantially similar." *See, e.g., Towler v. Sayles,* 76 F.3d 579, 582 (4th Cir.1996) (stating that these two elements are the necessary elements for plaintiff to raise a presumption of copying at trial and avoid judgment as a matter of law).

Stratford has conceded for the purposes of this motion that it had access to Ms. Bal-

dine's work. The only question that remains under this issue is whether Stratford's Comfort Center as designed and implemented by Catherine Joyce is "substantially similar" to the model and drawings of Baldine's "New Comfort Center." There are genuine issues of fact which preclude summary judgment on this issue.

A showing of substantial similarity is two fold.

> First, a plaintiff must show—typically with the aid of expert testimony—that the works in question are extrinsically similar because they contain substantially similar ideas that are subject to copyright protection. Second, a plaintiff must satisfy the subjective, or intrinsic, portion of the test by showing substantial similarity in how those ideas are expressed.... This portion of the test considers whether the intended audience could determine that the works are substantially similar, usually without the aid of expert testimony.

*Towler v. Sayles,* 76 F.3d 579, 583–84 (4th Cir.1996) (citations omitted). The Fourth Circuit has not explicitly determined whether both the intrinsic and the extrinsic portions of this test must be satisfied in order to survive summary judgment. Other circuits have discussed that issue. *See. e.g., Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1044–45 (9th Cir.1994); *Smith v. Jackson,* 84 F.3d 1213,1218 (9th Cir.1996); *Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 459 (11th Cir.), *cert. denied,* 513 U.S. 1062, 115 S.Ct. 675, 130 L.Ed.2d 607 (1994); *Kregos v. Associated Press,* 3 F.3d 656, 663 (2nd Cir. 1993), *cert. denied,* 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994); *Moore v. Columbia Pictures,* 972 F.2d 939, 945 (8th Cir. 1992); *Arica Institute, Inc. v. Palmer,* 970 F.2d 1067, 1072 (2nd Cir.1992); *Pasillas v. McDonald's Corp.,* 927 F.2d 440, 442 (9th Cir.1991). All of the courts cited basically held that "[a] court may grant summary

judgment for a defendant if the similarity between the two works concerns only noncopyrightable elements, or if no reasonable jury upon proper instruction would find that the two works are substantially similar." *Beal,* 20 F.3d at 459. Many courts have also noted that "[s]ubstantial similarity is usually an extremely close issue of fact and summary judgment has been disfavored in cases involving intellectual property." *Litchfield v. Spielberg,* 736 F.2d 1352, 1355 (9th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985); *see also. e.g., Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2nd Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). Further many circuits have held that "only the extrinsic test[3] [for substantial similarity] is relevant.... If plaintiff satisfies the extrinsic test, the intrinsic test's subjective inquiry must be left to the jury and summary judgment must be denied." *Smith,* 84 F.3d at 1218.

In this case, then, the first step is to examine whether Ms. Baldine has put forward any evidence of substantial similarity. Then, if such evidence exists, the next step will be to consider whether, taking all facts and inferences in the light most favorable to her, the similarities only concern noncopyrightable elements of the design. If the claim does not fail on that basis, the Court will follow the rule set out by the circuit courts cited above and leave the determination of intrinsic similarity to the jury unless it is apparent that no reasonable jury could find a substantial similarity.

Ms. Baldine has offered expert testimony of the substantial similarity between her "New Comfort Center" design and the comfort center design eventually implemented by Defendant. Susan West, an interior designer who has been involved with showroom design for many years, was designated as an expert by Plaintiff. Ms. West testified in her

---

**3.** The Ninth Circuit has explained, in the context of motion pictures and scripts, that [t]he extrinsic test is an objective test based on specific expressive elements: the test focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" in the two works.... The intrinsic test is a subjective test that focuses on

> "whether the ordinary, reasonable audience would recognize the defendant's work as a 'dramatization' or 'picturization' of the plaintiff's work."

*Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir.1994) (citations omitted).

deposition that there were many similarities between Ms. Baldine's model and drawing and the comfort center eventually implemented by Stratford. Some of her testimony concerned her opinion that "the designers who ended up doing the showroom were made privy to what [Ms. Baldine] had done and that they took her work and subtly either changed or enhanced her work and built a showroom on it." Other aspects of her testimony compared individual elements of Ms. Baldine's design with the finished showroom. Although there are, no doubt, differences between Ms. Baldine's model and drawings and the final design implemented by Stratford, exact copying need not be shown. Based on the testimony of Ms. West, and looking at all evidence in the light most favorable to Ms. Baldine, a jury reasonably could find a "substantial similarity" of Stratford's finished product to Ms. Baldine's copyrighted model.

■ Further, it cannot be said that the evidence of similarity relates only to noncopyrightable elements. Ms. Baldine obtained a registration of copyright on her entire model and the drawings she prepared. Stratford has failed to rebut the validity of that copyright. While Ms. Baldine does not own a copyright on elements or ideas, her copyright protects her entire design as reflected in her model and drawings. Just as one can not copyright a word but can copyright many words grouped into a poem, Ms. Baldine can't copyright all of the elements she used but she can copyright her arrangement of those elements as built into her model and reflected in her drawings. And just as use of one word from a poem would not be copyright infringement, use of several of the words in a similar enough arrangement might rise to that level. Even if certain elements of Ms. Baldine's model are noncopyrightable standing alone, use of enough of those elements in a similar arrangement could be an infringement of Ms. Baldine's entire protected model.

In addition, based on the evidence in the record, the Court can not say that a no reasonable jury could determine that there is a substantial similarity between the model and drawings and the finished showroom.

### D. Unfair Trade Practice and Unfair Competition

■ Plaintiff alleges a violation of N.C.G.S. 75–1.1: "Stratford by creating derivative works from the Model has been engaged in unfair trade practice and unfair competition" In *Nintendo of America, Inc. v. Aeropower Co., Ltd.,* 34 F.3d 246, 251 (4th Cir.1994), Judge Phillips wrote:

> [N.C.G.S. 75–1.1] does not purport to authorize trebling of either actual or statutory damages found recoverable for parallel violations of federal copyright law. Copyright infringement is not itself a violation of the state Act. Indeed, the Copyright Act preempts any legal or equitable right under state law which is 'equivalent' to any of the exclusive rights within the general scope of copyright, so that state law could not in fact make copyright infringement a violation of the state Act. 17 U.S.C. § 301(a).

Stratford contends that Ms. Baldine's claim as expressed in the complaint is but a restatement of the copyright claim and, hence, preempted by the Copyright Act. While the Defendant's reading of the claim is a fair interpretation of the wording, it is not the only reasonable interpretation. The claim also re-alleges all the earlier factual allegations of the complaint including Sturman's alleged representations about an agreement having been reached and payment being forthcoming—the same account related by Ms. Baldine in her deposition. False representations made by Sturman and, vicariously, Stratford for the purpose of obtaining Baldine's design with intent to use it without paying for it would constitute a viable claim under 75–1.1 since the fraud and not the actual copyright violation would be the gravamen of the claim.

■ Although a mere breach of contract does not constitute a violation of 75–1.1, a breach accompanied with aggravating circumstances—such as an intentional misrepresentation made for the purpose of deceiving another and which has the natural tendency to injure another—can violate the statute. *Branch Banking and Trust Co. v. Thompson,* 107 N.C.App. 53, 418 S.E.2d 694,

700, *rev. denied*, 332 N.C. 482, 421 S.E.2d 350 (1992). A jury, crediting Ms. Baldine's account, could find (1) that Stratford, through Sturman, entered into an agreement with Ms. Baldine but then decided to obtain her design by promising a forthcoming payment when no payment was actually contemplated, or (2) that Stratford never intended to' honor any agreement or finalize any arrangement with Ms. Baldine other than to induce her, with promises of imminent payment, to create a design which Stratford could then obtain without actually paying anywhere near the figures being discussed in contract negotiations. There is no dispute that Stratford did not pay Ms. Baldine a $25,000 retainer or· a monthly fee of $10,000.

### III.

For the reasons stated, the Defendant's Motion for Summary Judgment [Doc. # 49] is DENIED as to each of the claims.

### ORDER

For the reasons stated in the Memorandum Opinion filed contemporaneously with this Order, Defendant's Motion for Summary Judgment [Doc. # 49] is DENIED.