Krawiec v. Manly, 2016 NCBC 7.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1927

MICHAEL KRAWIEC, JENNIFER
KRAWIEC, and HAPPY DANCE,
INC./CMT DANCE, INC. (d/b/a FRED
ASTAIRE FRANCHISED DANCE
STUDIOS),

Plaintiffs,

v.

JIM MANLY, MONETTE MANLY,
METROPOLITAN BALLROOM, LLC,
RANKO BOGOSAVAC, and DARINKA
DIVLJAK,

Defendants.

ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO
DISMISS AMENDED COMPLAINT

{1}    **THIS MATTER** is before the Court upon (i) Defendants Jim Manly ("Mr. Manly"), Monette Manly ("Mrs. Manly") (together, "the Manlys"), and Metropolitan Ballroom, LLC's ("Metropolitan") (collectively with the Manlys, the "Metropolitan Defendants") Motion to Dismiss Amended Complaint (the "Metropolitan Defendants' Motion to Dismiss") and (ii) Defendants Ranko Bogosavac ("Bogosavac") and Darinka Divljak's ("Divljak")[1] Motion to Dismiss Plaintiffs' Amended Complaint (the "Dancers' Motion to Dismiss" and, collectively with the Metropolitan Defendants' Motion to Dismiss, the "Motions to Dismiss") in the above-captioned case.

{2}    After considering the Motions to Dismiss, the briefs in support of and in opposition to the Motions, and the arguments of counsel at a hearing on this matter, the Court hereby **GRANTS in part** and **DENIES in part** the Dancers' Motion to Dismiss and **GRANTS** the Metropolitan Defendants' Motion to Dismiss.

> *Hatcher Legal, PLLC, by Nichole M. Hatcher and Erin B. Blackwell, for Plaintiffs Michael Krawiec; Jennifer Krawiec; and Happy Dance, Inc./DMT Dance, Inc. d/b/a Fred Astaire Franchised Dance Studios.*

---

[1]  Bogosavac and Divljak are hereinafter collectively referred to as "the Dancers," and Mr. Manly, Mrs. Manly, Metropolitan, and the Dancers are hereinafter collectively referred to as "Defendants."

*St. John Law, PLLC, by Renner St. John, for Defendants Ranko Bogosavac and Darinka Divljak.*

*The Law Offices of H.M. Whitesides, Jr., P.A., by H.M. Whitesides, Jr., for Defendants Jim Manly, Monette Manly, and Metropolitan Ballroom, LLC.*

Bledsoe, Judge.

## I.

## PROCEDURAL HISTORY

{3}    Plaintiffs Michael Krawiec ("Mr. Krawiec"), Jennifer Krawiec ("Mrs. Krawiec"), and Happy Dance, Inc./CMT Dance, Inc. d/b/a Fred Astaire Franchised Dance Studios ("Happy Dance") (collectively, "Plaintiffs") filed their original Verified Complaint (the "Original Complaint") in this action on February 3, 2015.

{4}    On May 21, 2015, the Metropolitan Defendants and the Dancers filed separate motions to dismiss the Original Complaint (the "Original Motions"), seeking the dismissal of all claims asserted against them in the Original Complaint.  On July 22, 2015, the Court held a hearing on the Original Motions, at which all parties were represented by counsel.

{5}    On August 14, 2015, Plaintiffs filed a Motion for Leave to Amend Complaint, which the Court granted on August 24, 2015.  Plaintiffs' Amended Complaint (the "Amended Complaint"), attached to Plaintiffs' Motion for Leave to Amend, was deemed filed, effective upon entry of the Court's August 24 Order.  The Court's August 24 Order also denied the Original Motions as moot.

{6}    Thereafter, the Metropolitan Defendants and the Dancers filed their respective Motions to Dismiss Plaintiffs' Amended Complaint.  The Motions have been fully briefed, and are now ripe for resolution.[2]

---

[2] Pursuant to Rule 15.4 of the General Rules of Practice and Procedure for the North Carolina Business Court, the Court elects to rule on the pending Motions to Dismiss based on the parties' pleadings, briefs, and supporting documents, and the July 22, 2015 hearing in this matter.

## II.

## FACTUAL BACKGROUND

{7} The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the Amended Complaint that are relevant to the Court's determination of the Motions. *See, e.g.*, *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).

{8} Mr. and Mrs. Krawiec are the owners of Happy Dance, a dance studio located in Clemmons, North Carolina. (Am. Compl. ¶¶ 1–2.) Plaintiffs allege that on December 15, 2009, Happy Dance entered into an employment agreement with Bogosavac, a citizen of Bosnia and Herzegovina, whereby Bogosavac was granted an extension of an O-1B nonimmigrant work visa in exchange for Bogosavac's promise to work exclusively for Happy Dance as a dance instructor. (Am. Compl. ¶ 12.)

{9} On July 18, 2011, Happy Dance allegedly entered into a second employment agreement with Bogosavac, whereby Bogosavac was granted a second extension of his O-1B visa in exchange for his promise to work exclusively for Happy Dance. (Am. Compl. ¶ 13.) Plaintiffs contend that this second employment agreement is memorialized in an I-129 Petition for an O-1B nonimmigrant work visa prepared by Plaintiffs, a copy of which is attached to Plaintiffs' Amended Complaint as Exhibit A. (*See* Am. Compl. Ex. A.) This I-129 Petition was approved, and Bogosavac was granted an extension of his O-1B visa on August 8, 2011, which extended the visa from January 31, 2012 to January 30, 2013. (Am Compl. Ex. A.)

{10} Plaintiffs allege that also on July 18, 2011, Happy Dance entered into a similar employment agreement with Divljak, a citizen of Serbia. (Am. Compl. ¶ 14.) Plaintiffs allege that the employment agreement with Divljak is memorialized in a separate I-129 petition, a copy of which is attached to Plaintiff's Amended Complaint as Exhibit B. (*See* Am. Compl. Ex. B.) This I-129 Petition was also approved, and Divljak was granted an O-1B visa on August 17, 2011, with a validity period extending from September 1, 2011 until August 31, 2014. (Am. Compl. Ex. B.)

{11} Plaintiffs contend that under Bogosavac's alleged employment agreement with Happy Dance, Bogosavac agreed to work exclusively for Happy Dance from

January 31, 2012 until January 3, 2013. (Am. Compl. ¶ 16.) Plaintiffs further allege that Bogosavac was not permitted to be employed elsewhere for as long as he was employed under the O-1B visa. (Am. Compl. ¶ 16.) Plaintiffs also allege that Bogosavac agreed to reimburse Plaintiffs for all expenses paid by Plaintiffs to secure the O-1B visa and to support Bogosavac, in the event that Bogosavac left Happy Dance's employ before January 3, 2013. (Am. Compl. ¶ 16.) Plaintiffs attach an unexecuted document titled "Employment Agreement" as Exhibit C to Plaintiff's Amended Complaint as evidence of this alleged agreement. Although neither dated nor signed, Plaintiffs allege that a copy of this form document was executed by both Dancers. (*See* Am. Compl. ¶ 20.)

{12} Plaintiffs further allege that, pursuant to Divljak's alleged employment agreement with Happy Dance, Divljak agreed to work exclusively for Happy Dance from September 1, 2011 until August 31, 2014, and was not permitted to be employed elsewhere for as long as she was employed under the O-1B visa. (Am. Compl. ¶ 17.) Similar to Bogosavac's alleged agreement, Plaintiffs allege that Divljak agreed to reimburse Plaintiffs for expenses paid by Plaintiffs to secure the visa and to support Divljak, should Divljak decide to leave Happy Dance's employ prior to August 31, 2014. (Am. Compl. ¶ 17.)

{13} In addition to the above agreements, Plaintiffs allege that both Dancers entered into written agreements with Happy Dance, whereby both agreed not to: (i) work for another company offering dance instruction, or compete directly with Happy Dance in Forsyth County and adjacent counties for one year following the expiration or termination of their employment with Happy Dance, or (ii) disclose Happy Dance's confidential information to any person or entity for any purpose other than for the benefit of Happy Dance. (Am. Compl. ¶ 18; *see* Am. Compl. Ex. C.)

{14} Plaintiffs allege that Bogosavac and Divljak began working as dance instructors for Metropolitan on February 7, 2012 while still employed under their respective O-1B visas. (Am. Compl. ¶ 21.) Metropolitan is a dance studio owned by the Manlys and located in Charlotte, North Carolina. (Am. Compl. ¶¶ 3–4.) Plaintiffs further allege that both Dancers were also working as dance instructors at other

dance studios in Forsyth County and adjacent counties in North Carolina while still employed under their respective visas. (Am. Compl. ¶ 21.)

{15} Plaintiffs contend that after beginning to work for Metropolitan, the Dancers shared with Metropolitan confidential and trade secret information about Happy Dance's ideas and concepts for dance productions, marketing strategies and tactics, and student, client, and customer information. (Am. Compl. ¶ 25.) Plaintiffs also allege that, as a result of the Dancers' disclosure of confidential and trade secret information, Metropolitan produced and marketed Plaintiffs' shows as its own original productions, without Plaintiffs' permission. (Am. Compl. ¶ 25.)

III.

LEGAL STANDARD

{16} A motion to dismiss "generally tests the legal sufficiency of the complaint: Has the pleader given notice of such facts as will, if true, support a claim for relief under some legal theory?" *Concrete Serv. Corp.*, 79 N.C. App. at 681, 340 S.E.2d at 758 (citing *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970)). "The motion does not present the merits, but only whether the merits may be reached. . . . The policy behind the Rules of Civil Procedure is to resolve controversies on the merits, not on technicalities of pleading." *Id.* (internal citations omitted). In ruling on a motion to dismiss, "the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979). Therefore, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton*, 277 N.C. at 103, 176 S.E.2d at 166 (emphasis omitted).

IV.

FEDERAL PREEMPTION

{17}   The Court first considers whether any of Plaintiffs' claims are preempted by the federal Copyright Act, 17 U.S.C. §§ 101 *et seq.*  If so, any such claims fall outside this Court's subject-matter jurisdiction.[3]

{18}   Section 301(a) of the Copyright Act provides:

> [All] legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in Section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by [the Copyright Act].

17 U.S.C. § 301(a) (2012).

{19}   As a general rule, "a state law cause of action is preempted by the Copyright Act if (1) the cause of action falls within the subject matter of copyright law; and (2) the rights protected by state law are equivalent to any of the exclusive rights granted by the Copyright Act." *Out of the Box Developers, LLC v. LogicBit Corp.*, 2012 NCBC LEXIS 55, at *20 (N.C. Super. Ct. Oct. 30, 2012) (citing *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993)).

{20}   Plaintiffs allege that Defendants have misappropriated their "original ideas and concepts for dance production."  Section 102 of the Copyright Act provides copyright protection for "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced or otherwise communicated," including "dramatic works."  17 U.S.C. § 102(a).  "Works of authorship" include "pantomimes and choreographic works."  *Id.* § 102(a)(4).  "Pantomimes and choreographic works" are not defined in the Copyright Act, but the Act's legislative history states that "'choreographic works' do not include social dance steps and simple routines." H.R. Rep. No. 94-1476, at 54 (1976).  Further, "[i]n no case does copyright protection for an original work of authorship extend to

---

[3] At the July 22, 2015 hearing, the Court raised the issue of federal preemption *sua sponte* and requested submission of supplemental briefs regarding the Court's subject-matter jurisdiction. The parties filed supplemental briefs on August 10, 2015.

any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated or embodied in such work." 17 U.S.C. § 102(b).

{21} Significantly for this case, "a work is 'fixed' in a tangible medium of expression when its embodiment in a copy . . . , by or under the authority of the author, is sufficiently permanent and stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* § 101. "Like other creative works, dances are available for statutory copyright if [they are] 'fixed in any tangible medium of expression.'" *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 632 (2d Cir. 2004) (citing 17 U.S.C. § 102(a) and holding that seventy original dances were eligible for copyright protection because they were filmed or videotaped). In contrast, courts have held that "unrecorded performances *per se* are not fixed in tangible form." *Balt. Orioles, Inc. v. MLB Players Ass'n*, 805 F.2d. 663, 675 (7th Cir. 1986); *see also* H.R. Rep. No. 94-1476, at 131 (excluding from the Act's copyright protection "choreography that has never been filmed or notated, an extemporaneous speech, 'original works of authorship' communicated solely through conversations or live broadcasts, and a dramatic sketch or musical composition improvised or developed from memory and without being recorded or written down").

{22} Plaintiffs here have not alleged that their "original ideas for dance productions" have been commemorated or memorialized in any way or exist in any tangible medium of expression, including through film or videographic means. Accordingly, the Court concludes that Plaintiffs have simply alleged the misappropriation of their original ideas and concepts—which the Act makes clear are not eligible for copyright protection, *see* 17 U.S.C. § 102(b)—and have not otherwise pleaded that the allegedly misappropriated material constitutes "original works of authorship fixed in any tangible medium of expression" under the Act. *Id.* § 102(a). *See generally Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032 (9th Cir. 2015) (no copyright protection for sequence of yoga poses and breathing exercises because the sequence was an idea, process, or system designed to improve

health); *Horgan v. Macmillan*, 789 F.2d 157 (2d Cir. 1986) (observing copyright protection afforded for videotaped choreography of *Nutcracker* ballet). The Court therefore concludes that none of Plaintiffs' claims are preempted by the federal Copyright Act and thus that the Court has subject-matter jurisdiction over each of Plaintiffs' claims.

V.

THE DANCERS' MOTION TO DISMISS

{23} Plaintiffs assert various claims in their Amended Complaint, some only against the Dancers,[4] some only against the Metropolitan Defendants,[5] and some against all Defendants.[6] The Dancers' Motion seeks to dismiss all claims asserted against them, each for failure to state a claim upon which relief can be granted, and because the relevant statute of limitations for each claim has expired.

A.    Breach of Contract

{24} To assert a valid claim for breach of contract, a plaintiff must allege "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). "[W]here the complaint alleges each of these elements, it is error to dismiss a breach of contract claim under [Rule 12(b)(6)]." *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005).

{25} Plaintiffs' operative allegation is that Plaintiffs procured an extension of each Dancer's O-1B nonimmigrant work visa in exchange for each Dancer's express promise to work exclusively for Plaintiffs at the Happy Dance studio, which each Dancer allegedly breached by going to work for the Metropolitan Defendants.

{26} Plaintiffs base their breach of contract claims on the alleged breach of four separate contract documents: (i) the I-129 Petitions for Bogosavac and Divljak,

---

[4] Plaintiffs assert claims for breach of contract, fraudulent misrepresentation, and equitable estoppel against the Dancers only.

[5] Plaintiffs assert claims for tortious interference with contract, "aiding and abetting," and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 against the Metropolitan Defendants only.

[6] Plaintiffs assert claims for civil conspiracy, misappropriation of trade secrets, intentional infliction of emotional distress, negligent infliction of emotional distress, and unjust enrichment against all Defendants.

attached to the Amended Complaint as Exhibits A and B, respectively, and (ii) identical written employment agreements with Bogosavac and Divljak, an unexecuted version of which is attached to the Amended Complaint as Exhibit C. (Am. Compl. ¶¶ 13, 14, 18, 32, 33).[7]

{27} Exhibits A and B each contain a cover letter from Mr. Krawiec to the USCIS Officer at the United States Department of Homeland Security in St. Albans, Vermont followed by an I-129 Petition on behalf of each Dancer signed by Mr. Krawiec. Neither Petition is signed by either Dancer, and neither Dancer is copied on Mr. Krawiec's cover letters. Nonetheless, Plaintiffs allege that each Petition was filed based on each Dancer's agreement to work exclusively for Plaintiffs, which Plaintiffs argue is evidenced by the language of each Petition. (*See* Am. Compl. Ex. A (Bogosavac) ("[t]he foreign worker can work for the petitioner, but only as detailed in the petition and for the period authorized. Any change in employment requires a new petition.")); (Am. Compl. Ex. B (Divljak) ("[c]hanges in employment also require a new petition.").)

{28} Plaintiffs contend that this agreement is further reflected in the document titled "Employment Agreement" attached to the Amended Complaint as Exhibit C. Exhibit C is unsigned and undated, and is prepared for Divljak's signature alone. Plaintiffs allege that each Dancer signed identical Exhibit C-style Employment Agreements when they began their employment at Happy Dance and that Divljak removed the executed originals from Plaintiffs' files prior to her resignation from employment. The alleged Employment Agreement incorporates various aspects of the I-129 Petitions into its terms and purports to restrict each Dancer from "work[ing] for another company offering dance instruction and/or compet[ing] directly against [Happy Dance] as a direct competitor of [Happy Dance] in Forsyth County, North

---

[7] The Court may consider these documents to determine whether a contract did, in fact, exist between the parties. *See, e.g.*, *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009) ("When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment."). The Court may also "may reject allegations that are contradicted by documents attached to the [amended] complaint." *Id.* at 265, 672 S.E.2d at 553.

Carolina and adjacent counties for one year following the expiration or termination of this agreement." (Am. Compl. Ex. C, ¶ D.) The alleged Employment Agreement further provides that each Dancer "must reimburse employer [sic] foreseeable and unforeseeable expenses paid by the employer to secure O1-B [sic] visa and to support employee" in the event the Dancer "departs or is terminated before conclusion of initial term of O1-B [sic] visa." (Am. Compl. Ex. C, ¶ D.)

{29} As an initial matter, while the Court is satisfied that Plaintiffs have alleged breach for purposes of Rule 12(b)(6), "claims for breach of contract . . . necessarily hinge on the threshold issue of whether a valid contract actually existed between [the parties]." *Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus*, 230 N.C. App. 1, 6, 748 S.E.2d 171, 175 (2013). Moreover, "[a]n allegation that a valid contract exists between parties is a legal conclusion," and "[l]egal conclusions . . . are not entitled to a presumption of validity." *Id. See Guarascio v. New Hanover Health Network, Inc.*, 163 N.C. App 160, 165, 592 S.E.2d 612, 614 (2004) (holding that employee's assertion that valid employment contract existed between employee and defendant was legal conclusion "not entitled to a presumption of truth") (citation and quotation marks omitted).

{30} Under North Carolina law, a valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms. *Horton v. Humble Oil & Refining Co.*, 255 N.C. 675, 679, 122 S.E.2d 716, 719 (1961). "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995).

{31} Plaintiffs specifically allege here that the I-129 Petitions and the unsigned Employment Agreements are each separate contracts between Plaintiffs and each Dancer. Based on its review of these documents and Plaintiffs' allegations, the Court concludes that Plaintiffs have adequately pleaded that a contract exists between Happy Dance and each Dancer for purposes of Rule 12(b)(6). In particular, Plaintiffs allege that the Employment Agreements were signed by the Dancers, and the Court concludes that the purported Agreements otherwise evidence mutual assent,

mutuality of obligation, and definite terms.  While the Court is not persuaded that the I-129 Petitions constitute stand-alone contracts, each Petition is referenced and incorporated in substantial part into each alleged Employment Agreement, and, in addition, provides factual support for Plaintiffs' allegation that contracts existed between the parties. *See, e.g.*, *Butterfield v. Williamson*, No. COA07-1488, 2008 N.C. App. LEXIS 1463, at *9 (Aug. 5, 2008) (unpublished) (holding that representations in H-1B visa petition provided evidence contract existed).[8]  Accordingly, the Court concludes that Plaintiffs' allegations, viewed in the light most favorable to Plaintiffs and when considered with the I-129 Petitions and the Employment Agreements, sufficiently state that a valid contract existed between Happy Dance and each Dancer for purposes of Rule 12(b)(6).

{32}  The Dancers separately contend that Exhibit C, as an undated and unexecuted document, does not meet the requirements of a non-compete agreement under North Carolina law, and that Plaintiffs' claims for breach of the non-compete should therefore be dismissed.[9]  *See New Hanover Rent-A-Car, Inc. v. Martinez*, 136 N.C. App. 642, 644, 525 S.E.2d 487, 489 (2000) ("The requirement that an agreement not to compete be in writing includes a requirement that the writing be signed.") (citing N.C. Gen. Stat. § 75-4).  Because Plaintiffs allege that a document in the style of Exhibit C was signed by both Dancers, however, the Court concludes that dismissal of Plaintiffs' claim for breach of the non-competition agreement on this basis is not proper at this stage of the litigation.[10]

{33}  The Dancers also contend that Plaintiffs' claims are barred as a matter of law by the applicable statute of limitations.  "A statute of limitations can be the basis

---

[8]  Plaintiffs cite *Butterfield* to support their contention that the I-129 Petitions constituted standalone contracts; *Butterfield*, however, simply held that statements in a visa petition may constitute evidence bearing on the parties' mutual intent in assessing whether a valid contract existed between the parties.

[9]  The Dancers have not otherwise challenged the enforceability of the non-compete provision in each alleged Employment Agreement on this Motion.

[10]  The Court's ruling is without prejudice to the Dancers' right to raise this defense again at summary judgment and/or at trial.

for dismissal on a Rule 12(b)(6) motion if the face of the complaint discloses that plaintiff's claim is so barred." *Reunion Land Co. v. Village of Marvin*, 129 N.C. App. 249, 250, 497 S.E.2d 446, 447 (1998) (citation omitted). The statute of limitations for breach of contract claims is three years, N.C. Gen. Stat. § 1-52, and begins to run when the alleged breach occurs. *See Silver v. N.C. Bd. of Transp.*, 47 N.C. App. 261, 266, 267 S.E.2d 49, 53–54 (1980).

{34} Plaintiffs filed their Original Complaint on February 3, 2015, shortly before the third anniversary of the Dancers' resignation from employment on February 7, 2012. Although the Dancers seek to introduce affidavit testimony to establish that the Dancers provided Plaintiffs notice of their resignations on January 30, 2012, thus triggering the statute of limitations on that date and barring Plaintiffs' claim, the Court may not consider such testimony on a Rule 12(b)(6) motion. *See* N.C. R. Civ. P. 12(b); *see, e.g.*, *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 203, 652 S.E.2d 701, 707 (2007) ("As a general proposition, therefore, matters outside the complaint are not germane to a Rule 12(b)(6) motion. Indeed, as N.C.R. Civ. P. 12(b) makes clear, a Rule 12(b)(6) motion is converted to one for summary judgment if 'matters outside the pleading are presented to and not excluded by the court . . . .'") (citation omitted).[11]

{35} In addition, although Plaintiffs' Amended Complaint alleges that "[w]hile still employed and financially supported by Plaintiffs, [the Dancers] began working concurrently as dance instructors for [the Metropolitan Defendants], as well as other companies[,]" the Court cannot conclude, from the allegations on the face of the Amended Complaint, that this alleged conduct occurred before February 3, 2012. Thus, the Court cannot conclude that the statute of limitations bars Plaintiffs' breach of contract claim at this stage of the litigation.

---

[11] The Court declines to convert the Motion into a motion for summary judgment under Rule 56.

{36}    Accordingly, the Court concludes that Plaintiffs have stated a valid claim for breach of contract against the Dancers and that the Dancers' Motion to Dismiss this claim should be denied.

B.    Fraudulent Misrepresentation

{37}    To state a claim for fraud, a plaintiff must allege that the defendant made a "(1) false representation or concealment of material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Harrold v. Dowd*, 149 N.C. App. 777, 782, 561 S.E.2d 914, 918 (2002) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). Additionally, N.C. R. Civ. P. Rule 9(b) requires that all averments of fraud must be pled with particularity, including as to the "time, place and content of the fraudulent misrepresentation, [the] identity of the person making the representation and what was obtained as a result of the fraudulent act or representation." *Powell v. Wold*, 88 N.C. App. 61, 64, 362 S.E.2d 796, 797 (1987).

{38}    Here, Plaintiffs allege that:

> [o]n or about December 2010, in a conversation at Plaintiffs' dance studio, Defendant Bogosavac made an intentional false representation of material fact when he represented to Plaintiffs that he would continue to work exclusively for Plaintiffs' dance studio in exchange for the Plaintiffs' procurement of a second extension of his O1-B [sic] work visa.

(Am. Compl. ¶ 59.)

{39}    Plaintiffs also allege that "[o]n or about April 2011, in a conversation via Skype," Divljak made the same intentionally false representation. (Am. Compl. ¶ 60.) Plaintiffs allege that the Dancers "made the foregoing misrepresentations with knowledge of the fact they had no intention of actually going to work exclusively for Plaintiffs, but, instead, were going to begin working for [the Metropolitan Defendants] after Plaintiffs procured their visas" and that the false representations were "reasonably calculated to deceive Plaintiffs" and were made "with the intention that Plaintiffs would act upon their misrepresentations by securing an O1-B [sic] work visa for each of them." (Am. Compl. ¶¶ 61–62.) Finally, Plaintiffs allege that "[i]n reliance on Defendant[s] Bogosavac and Divljak's misrepresentations, Plaintiffs

incurred significant expenses related to the procurement of Defendants' visas and the travel accommodations for Defendant Divljak[.]" (Am. Compl. ¶ 63.)

{40} The Court concludes that these allegations sufficiently state a claim for fraud under North Carolina law and are pleaded with sufficient particularity to satisfy Rule 9(b) in these circumstances.

{41} The Dancers further contend that Plaintiffs' fraudulent misrepresentation claims are barred by the applicable statute of limitations. The three-year statute of limitations for claims based on fraud "'begins to run from the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence.'" *Hyde v. Taylor*, 70 N.C. App. 523, 528, 320 S.E.2d 904, 908 (1984) (quoting *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 7, 149 S.E.2d 570, 575 (1966) and N.C. Gen. Stat. § 1-52(9)). Because the Court is unable to conclude from the allegations of the Amended Complaint that Plaintiffs discovered, or should have discovered in the exercise of reasonable diligence, the Dancers' alleged fraudulent misrepresentations prior to February 3, 2012, the Court cannot conclude that the statute of limitations bars Plaintiffs' fraud claims against the Dancers at this stage of the litigation.[12] The Court therefore concludes that the Dancers' Motion to Dismiss Plaintiffs' fraudulent misrepresentation claims should be denied.

C. <u>Misappropriation of Trade Secrets</u>

{42} Plaintiffs allege that their "original ideas and concepts for dance production, marketing strategies and tactics, as well as student, client and customer lists and their contact information" constitute protectable trade secrets, and claim that the Dancers have violated the North Carolina Trade Secrets Protection Act ("TSPA") by misappropriating such information. (Am. Compl. ¶ 66.)

---

[12] Because the Court concludes that Plaintiffs' fraudulent misrepresentation should survive the Dancers' 12(b)(6) motion, the Court also concludes that Plaintiffs' claim for punitive damages under N.C. Gen. Stat. § 1D-15 should not be dismissed at this time. *See* N.C. Gen. Stat. § 1D-15 ("Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) [f]raud (2) [m]alice (3) [w]illful or wanton conduct.").

{43} To adequately plead a claim for misappropriation of trade secrets, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *VisionAir, Inc. v. James*, 167 N.C. App. 504, 510–11, 606 S.E.2d 359, 364 (2004) (citing *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003)). A plaintiff must also allege "the acts by which the misappropriation was accomplished." *Veer Right Mgmt. Group, Inc. v. Czarnowski Display Serv.*, 2015 NCBC LEXIS 13, at *15 (N.C. Super. Ct. Feb. 4, 2015) (citing *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 327, 660 S.E.2d 577, 585–86 (2008)). "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is insufficient to state a claim for misappropriation of trade secrets." *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 585–86 (internal quotation marks and citation omitted).

{44} The TSPA defines a "trade secret" as

> business or technical information . . . that: (a) Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

N.C. Gen. Stat. § 66-152(3). The TSPA defines "misappropriation" as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66-152(1).

{45} The Dancers contend that Plaintiffs' claim for misappropriation of trade secrets fails because Plaintiffs have not identified their alleged trade secrets with sufficient particularity or sufficiently alleged their reasonable efforts to protect the alleged trade secret information. The Court agrees.

{46} First, Plaintiffs' identification of its alleged trade secret as "original ideas and concepts for dance production" is so non-specific and generalized as to be meaningless. As in *Washburn*, Plaintiffs' description here is "broad and vague" as well as "general and conclusory," 190 N.C. App. at 327, 660 S.E.2d at 586, and does not permit the Dancers "to delineate that which [they are] accused of misappropriating" or the Court "to determine whether misappropriation has or is threatened to occur." *VisionAir,* 167 N.C. App. at 510–11, 606 S.E.2d at 364. This is particularly true here where Plaintiffs have not alleged that these "ideas and concepts" have been memorialized in any way or that they are capable of objective verification of any kind.

{47} The Court further concludes that the Plaintiffs' identification of its remaining trade secrets—"marketing strategies and tactics [and] student, client and customer lists and their contact information"—is similar to the identifications found lacking in *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 586 ("business methods; clients, their specific requirements and needs; . . . other confidential information pertaining to [plaintiff's] business . . . confidential client information and confidential business information"); *Aecom Tech. Corp. v. Keating*, 2012 NCBC LEXIS 9, at *8 (N.C. Super. Ct. Feb. 6, 2012) ("customer lists, customer contract information, pricing information, and product information"); and *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *68 (N.C. Super. Ct. Nov. 3, 2011) ("proprietary formulas, methodologies, customer and pricing data and other confidential information"). At the same time, Plaintiffs' identification of its remaining trade secrets contains less detail and context than the descriptions found sufficient in *S. Fastening Sys. v. Grabber Constr. Prods.*, 2015 NCBC LEXIS 42, at *11 (N.C. Super. Ct. Apr. 28, 2015) ("confidential customer information such as customer contact information and customer buying preferences and history . . . confidential freight information, sales reports, prices and terms books, sales memos, sales training manuals, commission reports, and information concerning [plaintiff's] relationship with its vendors") and the cases upon which *Southern Fastening* relies.

{48} Last, and separately, "the requirement of specificity extends beyond identifying trade secrets to also require specificity as to the acts by which misappropriation was accomplished." *Velocity Solutions, Inc. v. BSG, LLC*, 2015 NCBC LEXIS 54, at *23–24 (N.C. Super. Ct. May 26, 2015). The Court concludes that Plaintiffs' bare, unsupported allegation that the Dancers "unlawfully disclosed" Plaintiffs' alleged trade secrets does not satisfy this mandatory pleading requirement. *See, e.g.*, *Veer Right*, 2015 NCBC LEXIS 13, at *15.

{49} Because Plaintiffs have neither identified their alleged trade secrets with sufficient particularity nor sufficiently alleged the specific acts by which the alleged misappropriation was accomplished, the Court concludes that Plaintiffs have not adequately pleaded a claim for misappropriation of trade secrets under the TSPA and thus that Plaintiffs' misappropriation claim should be dismissed.

D.    <u>Intentional Infliction of Emotional Distress</u>

{50} To state a valid claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant (1) intentionally or recklessly engaged in extreme and outrageous conduct, (2) intending to cause or actually causing, (3) severe emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 452–53, 276 S.E.2d 325, 335 (1981). "[L]iability arises under this tort when a defendant's conduct exceeds all bounds usually tolerated by a decent society and the conduct causes mental distress of a very serious kind." *Stanback*, 297 N.C. at 196, 254 S.E.2d at 622 (internal quotation marks and citation omitted).

{51} Determining "[w]hether or not conduct constitutes extreme and outrageous behavior is initially a question of law for the court." *Simmons v. Chemol Corp.*, 137 N.C. App. 319, 325, 528 S.E.2d 368, 371 (2000) (citations omitted). "To establish the essential element of extreme and outrageous conduct, the conduct must go beyond all possible bounds of decency and 'be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 586, 440 S.E.2d 119, 123 (1994)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not constitute extreme and outrageous conduct. *Johnson v. Bollinger*, 86 N.C. App. 1, 6, 356 S.E.2d 378, 382

(1987).  Moreover, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress." *Thomas v. N. Telecom, Inc.*, 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000) (applying North Carolina law) (citation omitted).

{52}  Plaintiffs allege that the Dancers' extreme and outrageous conduct consists of the Dancers "maliciously and fraudulently inducing Plaintiffs to procure O1-B [sic] visas for [the Dancers], misappropriating Plaintiffs' trade secrets, and conspiring to cripple or eliminate Plaintiffs as a competitor in the dance industry."  (Am. Compl. ¶ 80.)  The Court concludes, however, that these conclusory allegations, devoid of supporting facts, do not allege the sort of "atrocious" conduct that our courts have found actionable as "utterly intolerable in a civilized community." *Simmons*, 137 N.C. App. at 325, 528 S.E.2d at 371; *see generally, e.g.*, *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 312 (1985) ("It must be emphasized . . . that major outrage is essential to the tort.") (quoting Restatement of Torts § 46, Comment f); *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 122–23 (1986) (extreme and outrageous behavior not found where the defendant yelled and threw menus at plaintiff and interfered with her supervision of employees).

{53}  Accordingly, the Court concludes that Plaintiffs have not adequately pleaded a claim for intentional infliction of emotional distress and that Plaintiffs' claim should therefore be dismissed.

E.    Negligent Infliction of Emotional Distress

{54}  The elements of a claim for negligent infliction of emotional distress are: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Wilkerson v. Duke Univ.*, 229 N.C. App. 670, 675, 748 S.E.2d 154, 159 (2013).

{55}  Plaintiffs allege that the Dancers "negligently engaged in the conduct described herein, as they had a legal duty to comply with the terms of their contracts with Plaintiffs; they breached their duty by unlawfully going to work for Plaintiffs' competitors, soliciting Plaintiffs' customers, and disclosing Plaintiffs' trade secrets[.]"

(Am. Compl. ¶ 87.) Although pleaded as a claim sounding in negligence, Plaintiffs' supporting allegations rest entirely on Dancers' intentional conduct. It is axiomatic that "if there is no underlying negligence, there is no claim for [negligent infliction of emotional distress]." *Williams v. Altec Indus.*, No. 5:10-CV-356-BO, 2011 U.S. Dist. LEXIS 86503, at *11–12 (E.D.N.C. Aug. 3, 2011) (applying North Carolina law) (citations and quotations omitted). Plaintiffs' claim should therefore be dismissed on this basis.

{56} Moreover, even if Plaintiffs' Amended Complaint could be read as asserting negligent conduct in failing to perform under the alleged contract, "[w]hen the plaintiff's complaint alleges acts . . . that are intentional in nature, and simply concludes that the acts were committed negligently, [the complaint] is insufficient to state a claim for negligent infliction of emotional distress." *Sasser v. City of Whiteville*, No. 7:10-CV-95-D, 2010 U.S. Dist. LEXIS 122678, at *6–7 (E.D.N.C. Nov. 18, 2010) (applying North Carolina law) (citations and quotations omitted). Indeed, "it has long been the law in North Carolina that a tort action cannot lie against a promisor 'for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill.'" *Artistic S. v. Lund*, 2015 NCBC LEXIS 113, at *22–23 (N.C. Super. Ct. Dec. 9, 2015) (quoting *N.C. Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 83, 240 S.E.2d 345, 351 (1978)). For this additional reason, therefore, Plaintiffs' claim for negligent infliction of emotional distress should be dismissed.

F.    Unjust Enrichment

{57} It is well settled under North Carolina law that a claim for unjust enrichment is "a claim in quasi contract or a contract implied in law" and, therefore, "[i]f there is a contract between the parties the contract governs the claim and the law will not imply a contract." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). As a result, our courts have recognized that "the doctrine of unjust enrichment is based on 'quasi-contract' or contract 'implied in law' and thus will not apply . . . where a contract exists between two parties." *Atl. & E. Carolina Ry. Co. v. Wheatly Oil Co.*, 163 N.C. App. 748, 753, 594 S.E.2d 425, 429 (2004).

{58} In addition, where, as here, "the state law claim for breach of contract remains viable, it is unnecessary to address the claim for unjust enrichment [on a Rule 12(b)(6) motion]." *Forest2Market, Inc. v. Am. Forest Mgmt.*, No. 3:05cv423, 2008 U.S. Dist. LEXIS 33185, at *16–17 (W.D.N.C. Apr. 21, 2008); *see also Surratt v. Brown*, 2015 NCBC LEXIS 75, at *20 (N.C. Super. Ct. July 27, 2015) (declining to address or dismiss unjust enrichment claim where breach of contract claim survived motion to dismiss); *Shelton v. Duke Univ. Health Sys.*, 179 N.C. App. 120, 125, 633 S.E.2d 113, 116 (2006) (stating on Rule 12(b)(6) motion: "Because we have not held the contract to be unenforceable, we do not address [plaintiff's unjust enrichment] argument.").

{59} Accordingly, based on the above, the Court concludes that Plaintiffs' claim for unjust enrichment should not be dismissed at this time.

G.    Equitable Estoppel

{60} Plaintiffs purport to assert an independent cause of action for equitable estoppel. As this Court has recognized, however, the doctrine of equitable estoppel is not a basis for an affirmative claim for relief. Rather, the doctrine "provides a defense to bar enforcement of opposing claims or affirmative defenses." *Blue Ridge Pediatric & Adolescent Med., Inc. v. First Colony Healthcare, LLC*, 2012 NCBC LEXIS 52, at *38 (N.C. Super. Ct. Oct. 3, 2012); *see, e.g.*, *Duke Univ. v. Stainback*, 320 N.C. 337, 341, 357 S.E.2d 690, 692 (1987) ("Equitable estoppel may be invoked, in a proper case, to bar a defendant from relying upon the statute of limitations.").[13] Accordingly, the Court concludes that Plaintiffs' purported claim for equitable estoppel should be dismissed.

H.    Civil Conspiracy

{61} To state a claim for civil conspiracy, a plaintiff must allege (1) a conspiracy, (2) wrongful acts by the alleged conspirators in furtherance of the conspiracy, and (3)

---

[13] *See generally, e.g.*, *Parker v. Westat, Inc.*, 301 F. Supp. 2d 537, 544 (E.D. Va. 2004) ("'[E]quitable estoppel usually operates as a shield, as opposed to a sword, and it does not of itself create a new right or give a cause of action; rather, it serves to prevent losses otherwise inescapable and to preserve rights already acquired.'") (quoting *Meriweather Mowing Serv. v. St. Anne's-Belfield, Inc.*, 51 Va. Cir. 517, 519 (Va. Cir. Ct. 2000)) (applying Virginia law).

resulting injury. *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444, 666 S.E.2d 107, 115 (2008); *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008). North Carolina does not recognize a separate civil action for civil conspiracy. *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005). Rather, civil conspiracy is premised on the underlying wrongful acts. *Id.*; *Piraino Bros., LLC v. Atl. Fin. Group*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011). A civil conspiracy is essentially an action for damages, and no action lies unless one or more conspirators actually cause damage. *See Bradshaw v. Maiden*, 2015 NCBC LEXIS 80, at *46 (N.C. Super. Ct. Aug. 10, 2015) (citing *Henderson v. LeBauer*, 101 N.C. App. 255, 260, 399 S.E.2d 142, 145 (1991)); *see generally Coleman v. Coleman*, 2015 NCBC LEXIS 114 (N.C. Super. Ct. Dec. 10, 2015). In short, "civil conspiracy is premised on the underlying wrongful acts," *Dove*, 168 N.C. App. at 690, 608 S.E.2d at 800, and "liability attaches only if one of the conspirators is liable for an underlying tort." *Riley v. Dow Corning Corp.*, 767 F. Supp. 735, 740 (M.D.N.C. 1991) (applying North Carolina law).

{62}   Here, Plaintiffs allege that the Dancers:

> made an agreement with [the Metropolitan Defendants] whereby the Dancers would unlawfully leave Plaintiffs' dance studio to come work for [the Metropolitan Defendants], unlawfully solicit Plaintiffs' customers, and unlawfully disclose Plaintiffs' trade secrets to [the Metropolitan Defendants] in order to cripple or eliminate Plaintiffs as a competitor in the dance industry.

(Am. Compl. ¶ 48.) Plaintiffs further allege that "[a]s a result of the conspiracy between the Defendants, made pursuant to a common scheme, Plaintiffs' business and reputation were significantly damaged." (Am. Compl. ¶ 49.)

{63}   Of the claims remaining against the Dancers—breach of contract, fraudulent misrepresentation, and unjust enrichment—only one, fraudulent misrepresentation, could potentially serve as the requisite underlying tort. *See, e.g.*, *Koch Measurement Devices, Inc. v. Armke*, 2013 NCBC LEXIS 45, (N.C. Super. Ct. Oct. 14, 2013) ("any civil conspiracy must necessarily be premised on an underlying tort claim."). Plaintiffs' fraudulent misrepresentation claim, however, rests upon

allegations of fraud by the Dancers in 2010 and 2011, which are completely unrelated to the alleged (and much later) agreement between the Dancers and the Metropolitan Defendants upon which Plaintiffs' civil conspiracy claim rests. Accordingly, the Court concludes that Plaintiffs' claim for civil conspiracy against the Dancers should be dismissed.

VI.

THE METROPOLITAN DEFENDANTS' MOTION TO DISMISS

{64} The Court next turns to the Metropolitan Defendants' Motion to Dismiss. Like the Dancers' Motion, the Metropolitan Defendants' Motion seeks dismissal of all of Plaintiffs' claims asserted against them.

A.  Tortious Interference with Contract

{65} "To establish a claim for tortious interference with contract, a plaintiff must show: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *White v. Cross Sales & Eng'g Co.*, 177 N.C. App. 765, 768–69, 629 S.E.2d 898, 901 (2006) (citing *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)). North Carolina courts have held that "competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 222, 367 S.E.2d 647, 650 (1988). A claim for tortious interference with contract must "allege facts demonstrating that defendants' actions were not prompted by legitimate business purposes." *Embree Constr. Grp. v. Rafcor, Inc.*, 330 N.C. 487, 500, 411 S.E.2d 916, 926 (1992) (citation and quotation omitted).

{66} Plaintiffs allege that they "had valid contracts with [the Dancers] whereby Plaintiffs procured O1-B [sic] nonimmigrant work visas for Defendants in exchange for Defendants' promises to work exclusively for Plaintiffs at Plaintiffs' dance studio," (Am. Compl. ¶ 38), and that the Metropolitan Defendants "had knowledge . . . of the

existing contracts pursuant to the O1-B [sic] work visas between Plaintiffs and [the Dancers]." (Am. Compl. ¶ 39.) Further, Plaintiffs allege that the Metropolitan Defendants "intentionally induc[ed the Dancers] not to perform under their contracts with Plaintiffs." (Am. Compl. ¶ 40.) Finally, Plaintiffs allege that the Metropolitan Defendants' "conduct was malicious and without justification" and, "[a]s a result of [the Metropolitan Defendants'] unjustified interference . . . , Plaintiffs suffered a significant loss in business revenue, and incurred significant damages and expenses." (Am. Compl. ¶¶ 44–45.)

{67} The Court has previously concluded that the Employment Agreements and the I-129 Petitions, read together in light of the incorporation of portions of the Petitions into the Employment Agreements, constitute the contracts on which Plaintiffs' claims for alleged breach of contract rest. Plaintiffs do not allege, however, that the Metropolitan Defendants had knowledge of either the Employment Agreements or the I-129 Petitions and instead contend that the Metropolitan Defendants simply knew that the Dancers had work visas. Plaintiffs have not alleged that the work visas constituted a contract between Plaintiffs and the Dancers or, more importantly, that the work visas contained the operative provisions of the Employment Agreements, including provisions relating to non-competition, non-solicitation and confidentiality upon which the specific allegations of the tortious interference claim rely.

{68} Further, even if the Metropolitan Defendants could be deemed to have had knowledge of the I-129 Petitions based on the existence of the Dancers' work visas, the Petitions do not represent that the Dancers had agreed not to work for the Metropolitan Defendants or others as Plaintiffs contend. To the contrary, the I-129 Petitions simply represented that the Dancers would be required to obtain new work visas to work for an employer other than Happy Dance, not that they were precluded from working for another employer. Indeed, the Employment Agreement with each Dancer allegedly contained the exclusivity provision that Plaintiffs seek to enforce in this action, and Plaintiffs have failed to allege that the Metropolitan Defendants had any knowledge of either Dancer's Employment Agreement.

{69}    Accordingly, based on the above, the Court concludes that because Plaintiffs have failed to allege facts showing that the Metropolitan Defendants knew of the contracts Plaintiffs have alleged existed with the Dancers, Plaintiffs' claim for tortious interference should be dismissed.[14]

B.    Aiding and Abetting

{70}    In its fourth cause of action labeled "Aiding and Abetting," Plaintiffs allege that the Metropolitan Defendants "had knowledge of [the Dancers'] contracts with Plaintiffs, and provided substantial assistance towards the breach of said contracts." (Am. Compl. ¶ 53.) Plaintiffs also allege that the Metropolitan Defendants "acted in concert with and assisted [the Dancers] with breaching their fiduciary duties to Plaintiffs by offering to and then subsequently employing them in violation of their employment contracts with Plaintiffs." (Am. Compl. ¶ 53.) Accordingly, it appears that Plaintiffs assert both a claim for aiding and abetting breach of contract and a claim for aiding and abetting breach of fiduciary duty.

{71}    Plaintiffs have not offered any case support for their purported claim for aiding and abetting breach of contract. It appears to the Court that such a claim has only been referenced in a single reported North Carolina decision—*Pete Fortner, PLLC v. Koonce Wooten & Haywood, LLP*, No. COA10-1260, 2011 N.C. App. LEXIS 1304 (2011) (unpublished)—and the trial court dismissed the claim in that case without subsequent appellate review.   *Id.* at *5.   Numerous other states have expressly declined to recognize such a cause of action. *See, e.g.*, *AmTrust N. Am., Inc. v. Safebuilt Ins. Servs.*, No. 14 Civ. 09494 (CM), 2015 U.S. Dist. LEXIS 162515, at *33 (S.D.N.Y. Dec. 1, 2015) ("New York law . . . affords no cause of action for aiding and abetting breach of contract."); *Zachman v. Vohra*, No. 1:15 CV 5293, 2015 U.S. Dist. LEXIS 157644, at *11 (N.D. Ill. Nov. 23, 2015) ("Illinois law does not recognize a cause of action for aiding and abetting breach of contract."); *Acclaim Sys. v. Infosys, Ltd.*, No. 13-7336, 2015 U.S. Dist. LEXIS 90937, at *14–15 (E.D. Pa. July 14, 2015)

---

[14] In light of the Court's dismissal of this claim, Plaintiffs' claim for punitive damages under N.C. Gen. Stat. § 1D-15 based on Defendants' alleged tortious interference with contract should likewise be dismissed.

(noting Pennsylvania law does not recognize claim for aiding and abetting breach of contract); *R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*, No. CV 12-8261-PCT-JAT, 2013 U.S. Dist. LEXIS 71074, at *24–25 (D. Ariz. May 20, 2013) (applying Arizona law and observing "[plaintiff] has provided no authority—and the Court has found none—recognizing a cause of action for aiding and abetting a breach of contract."). The Court therefore declines to recognize a cause of action for aiding and abetting a breach of contract under North Carolina law on the facts pleaded here.[15]

{72}   As for aiding and abetting breach of fiduciary duty, this Court has previously recognized that "[w]hether North Carolina recognizes a claim for aiding and abetting a breach of fiduciary duty remains an open question." *Veer Right*, 2015 NCBC LEXIS 13, at *6. Such a claim must necessarily fail here, however, because Plaintiffs have failed to allege a breach of a fiduciary duty by the Dancers and have not brought a claim based on such an alleged breach. *See id.* at *8 ("[I]f North Carolina recognizes a claim for aiding and abetting breach of fiduciary duty, the elements would include: (1) violation of a fiduciary duty by the primary party . . . .").

{73}   Accordingly, the Court concludes that Plaintiffs have failed to state a valid claim for "aiding and abetting" and that Plaintiffs' purported claim should therefore be dismissed.

C.   <u>Misappropriation of Trade Secrets</u>

{74}   Because the Court has previously concluded in its analysis of the Dancers' Motion that Plaintiffs have neither identified their alleged trade secrets with sufficient particularity nor sufficiently alleged the acts by which the alleged misappropriation was accomplished, the Court similarly concludes that the Metropolitan Defendants' Motion to Dismiss this claim should be granted on these same grounds. Accordingly, the Court concludes that Plaintiffs' claim for

---

[15] Some courts have noted that "aiding and abetting breach of contract" is akin to a claim for tortious interference with contract. *See, e.g.*, *MacKay v. Donovan*, 747 F. Supp. 2d 496, 504 (E.D. Pa. 2010) ("Although Plaintiffs do not plead Count V as a tort, but rather as 'aiding and abetting in breach of contract,' for the purpose of this Motion the Court will construe this claim as a claim for tortious interference with contract.").

misappropriation of trade secrets against the Metropolitan Defendants should be dismissed.

D.    Unfair and Deceptive Trade Practices

{75}   To state a claim for unfair and deceptive trade practices ("UDTP") under N.C. Gen. Stat. § 75-1.1, a plaintiff must allege: "(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 373–74, 555 S.E.2d 634, 642 (2001). Moreover, "some type of egregious or aggravating circumstances must be alleged[.]" *Dalton v. Camp*, 353 N.C. 647, 657, 548 S.E.2d 704, 711 (2001) (internal quotation marks and citation omitted).

{76}   Plaintiffs' UDTP claim is advanced against only the Metropolitan Defendants and relies on the allegations Plaintiffs have pleaded in support of its now-dismissed tortious interference with contract and misappropriation of trade secrets claims. Having failed to plead that Plaintiffs have protectable trade secrets that the Metropolitan Defendants have misappropriated, and having failed to allege facts showing that the Metropolitan Defendants had knowledge of the alleged contracts Plaintiffs contend that the Dancers breached, the Court concludes that Plaintiffs' allegations in support of its UDTP claim fail to assert sufficient egregious or aggravating circumstances to sustain their UDTP claim. *See, e.g., AmeriGas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98 (N.C. Super. Ct. Oct. 15, 2015) (holding that "dismissal of [defendants'] trade secret and tortious interference claims extinguishes [plaintiff's] UDTP claim on these grounds"); *Combs*, 147 N.C. App. at 374, 555 S.E.2d at 642 (trial court properly dismissed UDTP claim based on tortious interference with contract when court dismissed tortious interference claim). Accordingly, the Court concludes that Plaintiffs' UDTP claim should be dismissed.

E.    Intentional Infliction of Emotional Distress

{77}   The Court has previously concluded that the Dancers' alleged extreme and outrageous conduct does not rise to the level necessary to state a claim for intentional infliction of emotional distress. Plaintiffs' Amended Complaint alleges that the

Metropolitan Defendants engaged in identical conduct. For the same reasons, therefore, the Court concludes that Plaintiffs' intentional infliction of emotional distress claim against the Metropolitan Defendants should be dismissed.

F.    Negligent Infliction of Emotional Distress

{78}   As stated above, to state a claim for negligent infliction of emotional distress, the plaintiff must allege: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Wilkerson*, 229 N.C. App. at 675, 748 S.E.2d at 159. "The first element of a [negligent infliction of emotional distress] claim requires allegations that the 'defendant failed to exercise due care in the performance of some legal duty owed *to [the] plaintiff* under the circumstances[.]'" *Horne v. Cumberland Cnty. Hosp. Sys.*, 228 N.C. App. 142, 148, 746 S.E.2d 13, 19 (2013) (quoting *Guthrie v. Conroy*, 152 N.C. App 15, 25, 567 S.E.2d 403, 410–11 (2002) (emphasis added) (alterations in original).

{79}   Here, although Plaintiffs allege that the Metropolitan Defendants "had a legal duty to abide by state [and] federal laws," and breached that duty, Plaintiffs' Amended Complaint contains no allegations supporting that the Metropolitan Defendants owed a duty, legal or otherwise, to Plaintiffs. (Am. Compl. ¶ 88.) Accordingly, the Court concludes that Plaintiffs have not stated a valid claim for negligent infliction of emotional distress against the Metropolitan Defendants and that Plaintiffs' claim should therefore be dismissed.

G.    Unjust Enrichment

{80}   Although the Court declined to reach Plaintiffs' unjust enrichment claim against the Dancers, Plaintiffs' claim against the Metropolitan Defendants is not pleaded as an alternative claim to a breach of contract claim against the Metropolitan Defendants. Indeed, Plaintiffs do not allege the existence of any contract between Plaintiffs and any of the Metropolitan Defendants. Accordingly, the Court properly considers the dismissal of Plaintiffs' claim on this Motion.

{81}   "To state a claim for unjust enrichment, a plaintiff must establish '(1) a measureable benefit was conferred on the defendant, (2) the defendant consciously

accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously.'" *S. Fastening*, 2015 NCBC LEXIS 42, at *27 (citing cases) (internal quotation omitted). An unjust enrichment claim "is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Booe*, 322 N.C. at 570, 369 S.E.2d at 556. "The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated. More must be shown than that one party voluntarily benefited another or his property." *JPMorgan Chase Bank, N.A. v. Browning*, 230 N.C. App. 537, 542, 750 S.E.2d 555, 559–60 (2013) (citation omitted).

{82} Plaintiffs allege here that the Metropolitan Defendants "received the benefit of Plaintiffs' procurement of the O1-B [sic] work visas for [the Dancers], because they were able to employ [the Dancers], though unlawfully, without paying for their O1-B [sic] work visas." (Am. Compl. ¶ 96.) Plaintiffs further allege that the Metropolitan Defendants "consciously accepted the benefit of employing [the Dancers] without properly obtaining new visas for them" and that Plaintiffs "did not procure the visas gratuitously or by an interference in Defendants' affairs." (Am. Compl. ¶¶ 96–97.)

{83} As pleaded here, however, the purported Employment Agreements require the Dancers to reimburse Plaintiffs for the costs Plaintiffs incurred "for employee's benefit" in obtaining the work visas in the event the Dancers did not fulfill their obligations under the Agreements. Accordingly, Plaintiffs seek through their unjust enrichment claim against the Metropolitan Defendants to recover the same alleged damages that they contend they are permitted to recover through their breach of contract claims against the Dancers. Our Supreme Court has long held that "[i]t is a well-established principle that an express contract precludes an implied contract with reference to the same matter." *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 906 (1962) (dismissing unjust enrichment claim against defendant where benefit to defendant was furnished under an express contract with another); *see, e.g., Jefferson Standard Ins. Co. v. Guilford Cnty.*, 225 N.C. 293, 300, 34 S.E.2d 430, 434 (1945) ("The hallmark rule of equity is that it will not apply in any

case where the party seeking it has a full and complete remedy at law.") (quotations and citations omitted). Application of this principle here requires dismissal of Plaintiffs' unjust enrichment claim against the Metropolitan Defendants.

{84} Separately, our Supreme Court has also made clear that "[n]ot every enrichment of one by the voluntary act of another is unjust." *Wright v. Wright*, 305 N.C. 345, 351, 289 S.E.2d 347, 350, (1982). Indeed, "[w]here a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched. The recipient of a benefit voluntarily bestowed without solicitation or inducement is not liable for their value." *Rhyne v. Sheppard*, 224 N.C. 734, 737, 32 S.E. 2d 316, 318 (1944). Here, Plaintiffs have failed to plead that the Metropolitan Defendants took any action to solicit or induce Plaintiffs to incur the expenses they now seek to recover through their unjust enrichment claim. For this separate reason, therefore, Plaintiffs' unjust enrichment claim against the Metropolitan Defendants should be dismissed. *See, e.g.*, *Homeq v. Watkins*, 154 N.C. App. 731, 733–34, 572 S.E.2d 871, 873 (2002) (holding unsolicited payment of a deed of trust does not, by itself, support an unjust enrichment claim); *JP Morgan*, 230 N.C. App. at 544, 750 S.E.2d at 561 (dismissing unjust enrichment claim for lack of solicitation or inducement of benefit conferred).

H.     Civil Conspiracy

{85} The Court has previously dismissed Plaintiffs' civil conspiracy claim against the Dancers, as well as all of the underlying tort claims against the Metropolitan Defendants. *See generally, e.g.*, *Piraino Bros.*, 211 N.C. App. at 350, 712 S.E.2d at 333-34 ("Where this Court has found summary judgment on the underlying tort claims to be proper, we have held that a plaintiff's claim for civil conspiracy must also fail."). For the same reasons, therefore, the Court concludes that Plaintiffs' claim for civil conspiracy against the Metropolitan Defendants should also be dismissed.

I.     Piercing the Corporate Veil

{86} Plaintiffs purport to assert "piercing the corporate veil" as a separate cause of action against the Manlys. The North Carolina Supreme Court has made it clear, however, that "the doctrine of piercing the corporate veil is not a theory of liability.

Rather, it provides an avenue to pursue legal claims against corporate officers or directors who would otherwise be shielded by the corporate form." *Green v. Freeman*, 367 N.C. 136, 146, 749 S.E.2d 262, 271 (2013). *See also Green v. Freeman*, 756 S.E.2d 368, 372 (N.C. Ct. App. 2014) ("[P]iercing the corporate veil . . . is not itself a cause of action.").

{87} Moreover, in light of the Court's dismissal of all of Plaintiffs' claims against the Metropolitan Defendants, the necessary predicate to the assertion of Plaintiffs' piercing the corporate veil theory of relief is extinguished. *See, e.g.*, *McKee v. James*, 2014 NCBC LEXIS 74, at *43–44 (N.C. Super. Ct. Dec. 31, 2014) (dismissing contingent claims based on piercing the corporate veil theory when claims against principal were dismissed).

{88} Accordingly, the Court concludes that Plaintiffs' claims against the Manlys for, and based on, piercing the corporate veil should be dismissed.

VII.

CONCLUSION

{89} Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** the Dancers' Motion to Dismiss as follows:

A. The Dancers' Motion to Dismiss Plaintiffs' claims for misappropriation of trade secrets, intentional infliction of emotional distress, negligent infliction of emotional distress, equitable estoppel, and civil conspiracy is **GRANTED**. These claims against the Dancers are hereby **DISMISSED** with prejudice.

B. The Dancers' Motion to Dismiss Plaintiffs' claims for breach of contract, fraudulent misrepresentation, unjust enrichment, and punitive damages is **DENIED**.

{90} The Court hereby **GRANTS** the Metropolitan Defendants' Motion to Dismiss and **DISMISSES** Plaintiffs' claims against the Metropolitan Defendants with prejudice.

**SO ORDERED**, this the 22nd day of January, 2016.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases